Pilar C. French, OSB No. 962880
frenchp@lanepowell.com
**LANE POWELL** PC
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone:  503.778.2100
Facsimile:  503.778.2200

Attorneys for Defendants Mortgage Electronic Registration Systems, Inc. and U.S. Bank
National Association

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

|  |  |
|---|---|
| In re | ) |
|  | ) Case No. 10-63814-fra13 |
| Donald Eugene McCoy, III, | ) |
|  | ) **DECLARATION OF PILAR C. FRENCH** |
| Debtor. | ) **IN SUPPORT OF SUPPLEMENTAL** |
|  | ) **BRIEFING IN SUPPORT OF MOTION** |
|  | ) **TO DISMISS COMPLAINT** |
| Donald E. McCoy, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| vs. | ) |
|  | ) |
| BNC Mortgage, Inc., a Delaware corporation, | ) |
| Mortgage Electronic Registration Systems, Inc., | ) |
| a Delaware corporation, Northwest Trustee | ) Adv. Proc. No. 10-06224-fra |
| Services, Inc., a Washington corporation, U.S. | ) |
| Bank National Association, as Trustee for the | ) |
| Structured Asset Investment Loan Trust, 2005- | ) |
| 10, AIG Federal Savings Bank, Finance | ) |
| America, LLC, Lehman Brothers Holdings, | ) |
| Inc., Impact One Mortgage Services, | ) |
|  | ) |
| Defendants. | ) |

PAGE 1 OF 4    DECLARATION OF PILAR C. FRENCH IN SUPPORT OF
SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION TO DISMISS
COMPLAINT

I, Pilar C. French, declare and state as follows:

1.    I am a member at Lane Powell PC and one of the attorneys for Defendants U.S. Bank, N.A., as Trustee for the Structured Asset Investment Loan Trust, 2005-10 ("U.S. Bank") and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively "Defendants"). I make this declaration based on my own personal knowledge and if called as a witness, I could and would competently testify to the facts stated herein.

2.    Attached as **Exhibit 1** is a Memorandum Decision, Findings of Fact and Conclusions of Law and Order Re: Defendants' Motion to Dismiss and Plaintiff's Motion to Compel, dated July 2, 2010, issued in *Trotter v. Bank of New York Mellon,* Kootenai County District Court for the State of Idaho, Case No. CV-10-95.

3.    Attached as **Exhibit 2** is a Memorandum Decision, Findings of Fact and Conclusions of Law and Order Re: Defendants' Motion for Summary Judgment, dated November 16, 2010, issued in *Edwards v. Mortgage Electronic Registration Systems, Inc.*, Kootenai County District Court for the State of Idaho, Case No. CV-10-2745.

4.    Attached as **Exhibit 3** is an Order, dated September 30, 2010, issued in *In Re Mortgage Electronic Registration Systems (MERS)* Litigation, United States District Court for the District of Arizona, MDL Docket No. 09-2119-JAT.

5.    Attached as **Exhibit 4** is a Memorandum Decision and Order granting Motion to Dismiss by defendants and denying Plaintiff's Motion to Amend Complaint, dated August 27, 2010, issued in *McGinnis v. GMAC Mortgage Corporation, et al.*, United States District Court for the District of Utah (Central Division), Case No. 2:10-cv-00301-TC.

6.    Attached as **Exhibit 5** is a Memorandum Decision and Order Granting Motion to Dismiss by Chase Home Finance and Denying Plaintiff's Motion for Summary Judgment, dated August 16, 2010, issued in *King v. American Mortgage Network*, United States District Court for the District of Utah (Northern Division), Case No. 1:09-CV-125 TS.

PAGE 2 OF 4    DECLARATION OF PILAR C. FRENCH IN SUPPORT OF
SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION TO DISMISS
COMPLAINT

7.      Attached as **Exhibit 6** is a Memorandum Decision and Order granting Motion to Dismiss by defendants, dated July 13, 2010, issued in *Rodeback v. Utah Financial*, United States District Court for the District of Utah (Northern Division), Case No. 1:09-cv-00134-TC.

8.      Attached as **Exhibit 7** is a true and correct copy of MERSCORP, Inc., Terms and Conditions (available at: http://www.mersinc.org/MersProducts/publications.aspx?mpid=1).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of January 2011, in Portland, Oregon.

*/s/ Pilar C. French*
Pilar C. French

PAGE 3 OF 4      DECLARATION OF PILAR C. FRENCH IN SUPPORT OF
SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION TO DISMISS
COMPLAINT

IN THE DISTRICT COURT OF THE FIRST JUDICIAL DISTRICT OF THE STATE

OF IDAHO IN AND FOR THE COUNTY OF KOOTENAI

| | |
|---|---|
| VERMONT TROTTER, ) | CASE NO. CV-10-95 |
| Plaintiff, ) | |
| ) | MEMORANDUM DECISION, FINDINGS |
| vs. ) | OF FACT AND CONCLUSIONS OF LAW |
| ) | AND ORDER RE: DEFENDANTS' |
| BANK OF NEW YORK MELLON F/K/A ) | MOTION TO DISMISS AND PLAINTIFF'S |
| BANK OF NEW YORK AS TRUSTEE FOR ) | MOTION TO COMPEL |
| THE CERTIFICATE HOLDERS OF ) | |
| CWALT, INC. ALTERNATIVE LOAN ) | |
| TRUST 2005-28CB MORTGAGE PASS- ) | |
| THROUGH CERTIFICATES SERIES 2005- ) | |
| 28CB; MORTGAGE ELECTRONI ) | |
| REGISTRATION SYSTEMS, INC.; and ) | |
| RECONTRUST COMPANY, N.A. ) | |
| ) | |
| Defendants. ) | |

Monica Flood Brennan, MONICA FLOOD BRENNAN, P.C., for Plaintiff

Jeff Barnes, W.J. BARNES, P.A., for Plaintiff (admitted *pro hac vice*)

Lance E. Olsen, ROUTH CRABTREE OLSEN, P.S., for Defendants

## I. Factual and Procedural History

On or about June 17, 2005, Plaintiff Vermont Trotter ("Trotter") executed a Note

and Deed of Trust in favor of Mortgage Electronic Registration Systems, Inc. ("MERS")

as nominee for Lender Countrywide Home Loans, Inc. ("Countrywide"), its assigns and

MEMORANDUM DECISION AND ORDER                          Page 1 of 13

Exhibit 1
Page 1 of 13

successors. *Complaint at p. 3, ¶¶ 7 and 8.* The Deed of Trust was recorded June 24,

2005, as Instrument No. 1959776 in the Kootenai County Recorder's Office.

*Defendants' Memorandum of Law in Support of Motion to Dismiss, Ex A, the Deed of*

*Trust.* [1] The Deed of Trust encumbers a piece of real property located in Kootenai

County, Idaho, commonly known as 512 South 14th Street, Coeur D'Alene, Idaho, 83814

(the "Property") and legally described as Lot 13 in Block 11 of Lakeshore Addition to

Coeur d'Alene, according to the official plat thereof, filed in Book B of Plats at page(s)

121[2], official records of Kootenai County, Idaho. This property is Trotter's primary

residence. *Complaint at p. 3. ¶ 5.*

Plaintiff's Complaint states that thereafter Countrywide transferred the servicing

rights on the loan to BAC Home Loans Servicing, LP, a subsidiary of Bank of America,

N.A. *Complaint at p. 4, ¶ 9*[3]. Defendants argue that servicing has remained with the

same entity as BAC Home Loans is the entity formerly known as Countrywide Home

Loans, Inc. and that the name change was a result of Bank of America's acquisition of

Countrywide. *Defendants' Memorandum of Law in Support of Motion to Dismiss at p. 3*

*and Ex. B, Countrywide Home Loans, Inc Company Profile.*

On or about August 18, 2009, MERS executed a Corporation Assignment of Deed

of Trust, and recorded the same as Instrument No. 2228916000 in the Kootenai County

Recorder's Office on August 24, 2009, the effect of which was to name as the new

beneficiary The Bank of New York Mellon f/k/a The Bank of New York ("Bank of New

York") as Trustee for the Certificate Holders of CWALT, Inc. Alternative Loan Trust

2005-28CB Mortgage Pass-through Certificates Series 2005-28CB. *Defendants'*

---

[1] Defendants have not provided page numbers nor labeled their exhibits, as such this Court has had to do so for form and function purposes of this Decision.
[2] Trotter's Complaint provides page 128, but the Deed of Trust and all other recordings provide page 121.
[3] There are two ¶ 9s in the Complaint, this is the first ¶ 9

MEMORANDUM DECISION AND ORDER                                    Page 2 of 13

Exhibit 1
Page 2 of 13

*Memorandum of Law in Support of Motion to Dismiss at p. 3 and Ex. C. Corporation Assignment of Deed of Trust.*

On August 24, 2009, The Bank of New York executed and caused to be recorded on August 24, 2009, in Kootenai County Recorder's Office, an Appointment of Successor Trustee under Instrument No. 2228917000, pursuant to I.C. § 45-1504, naming Recontrust Company, N.A. ("Recontrust") the successor trustee under the Deed of Trust. *Defendants' Memorandum of Law in Support of Motion to Dismiss at p.3 and Ex. D, Appointment of Successor Trustee, Complaint at p.4 ¶ 10 and Ex. B.*

Also on August 24, 2009, Recontrust recorded in Kootenai County Recorder's Office, a Notice of Default[4] as Instrument No. 2228918000, and mailed Trotter the same. The Notice of Default identifies The Bank of New York as beneficiary under the Deed of Trust. *Defendants' Memorandum of Law in Support of Motion to Dismiss at p.4 and Ex. E, Notice of Default, Complaint at p.4 ¶9[5] and Ex. A.*

On September 2, 2009, Recontrust executed and mailed Trotter the Notice of Trustee's Sale that set a foreclosure sale for January 11, 2010. *Defendants' Memorandum of Law in Support of Motion to Dismiss at p.4 and Ex. F, Notice of Trustee's Sale, Complaint at p.4 ¶ 11 and Ex. C.*

On January 6, 2010, Trotter filed his Complaint for Declaratory and Injunctive Relief and to Cancel Trustee's Sale Scheduled for January 11, 2010, wherein he alleges that he has never been provided with any Assignment demonstrating that the Deed of

---

[4] The Notice of Default provides that the default is "[f]ailure to pay the monthly payments due 05/01/2009 of principal, interest and impounds and subsequent installments due thereafter; plus late charges; together with all subsequent sums advanced by beneficiary pursuant to the terms and conditions of said Deed of Trust, and any supplemental modifications thereto. As of 08/18/2009 this amount is $5,762.88, together with any unpaid and/or accruing real property taxes, and/or assessments, attorney fees, Trustees' fees and costs, and any other amount advanced to protect the security of said Deed of Trust."
[5] This is the second ¶ 9 of the Complaint.

MEMORANDUM DECISION AND ORDER                              Page 3 of 13

Exhibit 1
Page 3 of 13

Trust was transferred by Countrywide to anyone else including Bank of New York. He

also alleges that he has no information that informs him of the current owner of the Note.

Additionally, Trotter alleges that the securitized loan trust, into which his loan was

placed, may have been taken over by borrower default insurance. Consequently, Trotter

argues there may not be any default giving rise to a foreclosure action and sale, as his

loan obligation may have been liquidated in whole or in part. As such, Trotter argues that

the Defendants do not have standing to foreclose or the proper legal or equitable interest

in either the Note or Deed of Trust to institute a foreclosure action. *Complaint at pp. 4-6.*

On January 8, 2010, this Court filed its Temporary Restraining Order Cancelling

the Trustee's Sale Scheduled for January 11, 2010, finding that "Plaintiff may lose his

residence wrongfully without issuance of this temporary restraining order, and that said

injury may be irreparable through the scheduled foreclosure sale." *Order at p 3* On

February 5, 2010, this Court entered another Temporary Restraining Order restraining the

sale of the property on February 8, 2010.

On February 8, 2010, Defendants filed their Answer, and on April 12, 2010,

Defendants filed their Motion to Dismiss for Failure to State a Claim upon which Relief

can be Granted, pursuant to IRCP 12(b)(6), and a Memorandum of Law in Support of

Motion to Dismiss.

On May 12, 2010, Plaintiff filed his Memorandum of Law in Opposition to

Defendants' Motion to Dismiss, along with a Motion to Compel seeking this Court to

issue an order compelling the Defendants to fully and completely answer Interrogatories

and respond to the Request for Production of Documents dated February 16, 2010. On

May 18, 2010, Defendants filed their Response to Plaintiff's Motion to Compel

MEMORANDUM DECISION AND ORDER                           Page 4 of 13

Exhibit 1
Page 4 of 13

Production of Documents and their Reply to Plaintiff's Memorandum of Law in

Opposition to Defendants' Motion to Dismiss.

Oral argument was heard on May 26, 2010, and this Court took the matter under

advisement. This Memorandum Decision shall constitute this Court's findings of fact

and conclusions of law, pursuant to I.R.C.P. 52(a). Any of the following findings of fact

that should be denominated as a conclusion of law shall be deemed to be a conclusion of

law. Any of the following conclusions of law that should be denominated a finding of

fact shall be deemed a conclusion of law.

## II. Defendants' Motion to Dismiss

Defendants Bank of New York, MERS, and Recontrust request this Court to

dismiss Plaintiff's Complaint pursuant to IRCP 12(b)(6). Defendants also request that

this Court take judicial notice of the various public recordings that are attached to their

Memorandum of Law in Support of Motion to Dismiss pursuant to I.R.E. 201.

## A.    Standards

The standard for reviewing a dismissal for failure to state a cause of action

pursuant to I.R.C.P. 12(b)(6), is the same as the standard upon the grant of a motion for

summary judgment, if the court considers evidence outside the pleadings in ruling on the

motion. I.R.C.P. 12(b); *Idaho Sch. For Equal Educ. Opportunity v. Evans*, 123 Idaho

573, 850 P.2d 724 (1993); *Gardner v Hollifield*, 97 Idaho 607, 609, 549 P.2d 266, 268

(1976); *Green v. Gough*, 96 Idaho 927, 928, 539 P.2d 280, 281 (1975). In determining

whether a complaint adequately states a cause of action, every reasonable intendment will

be made to sustain it. *Curtis v Siebrand Bros. Circus & Carnival Co*, 68 Idaho 285, 194

P.2d 281 (1948) (citations omitted). A motion under this section admits the truth of the

facts alleged, and all intendments and inferences that reasonably may be drawn

MEMORANDUM DECISION AND ORDER                          Page 5 of 13

Exhibit 1
Page 5 of 13

therefrom, and such will be considered in light most favorable to the plaintiff. *Walenta v. Mark Means Co.*, 87 Idaho 543, 394 P.2d 329 (1964). A motion to dismiss for failure to state a claim should be granted where it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Gardner v. Hollifield, supra.* The issue is not whether the plaintiff will ultimately prevail, but whether the party is entitled to offer evidence to support the claims. *Sumpter v. Holland Realty, Inc.*, 140 Idaho 349, 351 93 P.3d 680, 682 (2004)(citation omitted).

A motion for summary judgment shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. I.R.C.P. 56(c); *Loomis v. City of Hailey*, 119 Idaho 434, 436, 807 P.2d 1272 (1991). Once the moving party has properly supported the motion for summary judgment, the non-moving party must come forward with evidence by way of affidavit or otherwise which contradicts the evidence submitted by the moving party and which establishes the existence of a material issue of disputed fact. *Zehm v. Associated Logging Contractors, Inc.*, 116 Idaho 349, 350, 775 P.2d 1191 (1988). The purpose of summary judgment proceedings is to eliminate the necessity of trial where facts are not in dispute and where existent and undisputed facts lead to a conclusion of law which is certain. *Berg v. Fairman*, 107 Idaho 441, 444, 690 P.2d 896 (1984).

If the court will be the ultimate trier of fact and if there are no disputed evidentiary facts, the judge is not constrained to draw inferences in favor of the party opposing the motion for summary judgment; rather, the trial judge is free to arrive at the most probable inferences to be drawn from uncontroverted evidentiary facts, despite the possibility of conflicting inferences, because the court alone is responsible for resolving

conflicts between those inferences. *Loomis*, 119 Idaho at 437, 807 P.2d 1272 (1991);

*Stafford v. Weaver*, 136 Idaho 223, 225, 31 P.3d 245 (2001) (citation omitted).

**B.    Discussion**

**1. Judicial Notice**

A court's decision to take judicial notice of an adjudicative fact is a determination

that is evidentiary in nature and is governed by the Idaho Rules of Evidence. *Newman v.*

*State*, --- P.3d ---, 2010 WL 323545 (Ct. App., January 29, 2010). I.R.E. 201(b) provides

that "a judicially noticed fact must be one not subject to reasonable dispute in that it is

either (1) generally known within the territorial jurisdiction of the trial court or (2)

capable of accurate and ready determination by resort to sources whose accuracy cannot

reasonably be questioned." A court must take judicial notice if requested by a party and

supplied with the necessary information. *Id.*, I.R.E. 201(d).

The exhibits that Defendants have attached to their Memorandum of Law in

Support of Motion to Dismiss, as Exhibits A-F (described above), are not subject to

reasonable dispute. In fact, Trotter has not disputed their authenticity providing the Court

with three of the same records. Further, the Defendants have requested that this Court

take judicial notice of the exhibits in writing and this Court does so pursuant to I.R.E.

201(d).

**2. Defendants have standing to maintain a foreclosure of the Property.**

Trotter argues in his Complaint and Memorandum of Law in Opposition to

Defendants' Motion to Dismiss that Bank of New York is not the beneficiary of the Deed

of Trust and Recontrust is not the successor trustee and has no standing to bring forth a

foreclosure action as against the Property, as MERS was never the beneficiary but merely

the nominee.

MEMORANDUM DECISION AND ORDER                                Page 7 of 13

Exhibit 1
Page 7 of 13

Trotter provides that "Idaho courts have spoken extensively on the alleged authority of MERS to do anything, and have uniformly, along with other jurisdictions, rejected the authority of MERS to undertake any action to institute or further a foreclosure including any purported assignment of either the Note or the Deed of Trust from the original lender to any third party, which would include Defendant Bank of New York herein." *Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss at pp. 3-4  ¶6.*

Trotter cites this Court to only two Idaho cases; both are cases from the United States Bankruptcy Court for the District of Idaho and are *ne constringo* on this Court.

Defendants argue that MERS was the beneficiary as defined in I.C. § 45-1502 and had the authority to assign its rights to Bank of New York, who then had the right to appoint a successor trustee, Recontrust. Further, Recontrust was vested with the powers of the original trustee, to include the power of sale upon default.

The Idaho Deed of Trust Act, I.C. § 45-1502 et seq. (the "Act"), sets out the guidelines and procedures for carrying out a non-judicial foreclosure proceeding. Beneficiary is defined in I.C. § 45-1502 as "the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or his successor in interest, and who shall not be the trustee." Further, in that statute, Trustee is defined as "a person to whom the legal title to real property is conveyed by trust deed, or his successor in interest."

I.C. § 45-1504(2) provides that:

> The trustee may resign at its own election or be replaced by the beneficiary. The trustee shall give prompt written notice of its resignation to the beneficiary. The resignation of the trustee shall become effective upon the recording of the notice of resignation in each county in which the deed of

Exhibit 1
Page 8 of 13

> trust is recorded. If a trustee is not appointed in the deed of
> trust, or upon the resignation, incapacity, disability,
> absence, or death of the trustee, or the election of the
> beneficiary to replace the trustee, the beneficiary shall
> appoint a trustee or a successor trustee. Upon recording the
> appointment of a successor trustee in each county in which
> the deed of trust is recorded, the successor trustee shall be
> vested with all powers of an original trustee.

This Court finds the following: that MERS was the beneficiary under the Deed of Trust, recorded as Instrument No. 1959776. The Deed of Trust provides **"MERS is the beneficiary under this Security Instrument."** *See Defendants' Memorandum of Law in Support of Motion to Dismiss. Exhibit A, at p. 1(emphasis in original)* Further, Bank of New York is the beneficiary pursuant to the recorded Assignment of Deed of Trust, recorded on August 24, 2009, as Instrument No. 222891600, in which MERS assigned its rights as beneficiary to Bank of New York, pursuant to I.C. § 45-1502(1). Also, as the Beneficiary, Bank of New York was entitled to appoint the successor trustee, in this case Recontrust. Pursuant to I.C. § 45-1504(2), upon recording the Appointment of Successor Trustee in the mortgage records of the county in which the trust deed is recorded, the successor trustee shall be vested with all of the powers of the original trustee. The Appointment of Successor Trustee was recorded in Kootenai County, wherein the Deed of Trust is recorded, on August 24, 2009, as Instrument No. 2228917000. Therefore, as a matter of law, this Court finds that Recontrust was vested with the powers of the original trustee, which includes the power of sale.

Trotter also argues that because the loan was securitized that there may be no default that would give rise to a foreclosure action or sale, and that his loan obligation may have been liquidated. Further, Trotter argues that Defendants have failed to address the matters of credit enhancements, insurances and applicable setoffs to the claimed

MEMORANDUM DECISION AND ORDER                                    Page 9 of 13

Exhibit 1
Page 9 of 13

amount due as set forth in paragraphs 15 and 16 of the Complaint; thus, there are issues of material fact concerning whether Bank of New York paid 100, 200 or more percent on the loan. This Court finds that Trotter has not cited this Court to any case, statute, contract, or other authority to support the preceding allegations and therefore has not stated a valid cause of action.

Lastly, this Court finds that the Note and Deed of Trust may be sold one or more times without prior notice to the Borrower. Further, the Deed of Trust provides that if the borrower breaches any covenant or agreement contained in the Security Instrument, the Property may be sold. *See Defendants' Memorandum of Law in Support of Motion to Dismiss, Exhibit A at ¶¶20 and 22*

Alternatively, this Court also dismisses Plaintiff's Complaint on the grounds that he has not made any cognizable legal claims. Noticeably absent from Trotter's Complaint is any argument that he is not in default, that he has made a payment and was not credited, that the amount owed is inaccurate or any other cognizable legal claim. Plaintiff has provided this Court with no controlling case law, statute or rule to support his alleged complaints.

### 3. Idaho's Deed of Trust Act, I.C. § 45-1502, et seq.

Defendants allege that they have complied with the statutory requirements in carrying out the non-judicial foreclosure. Specifically, Defendants allege that they have complied with I.C. §§ 45-1505(1)-(3) and 45-1506.

Trotter does not argue against this allegation, except to state, "whether Defendants allegedly 'complied with' the Idaho foreclosure procedure is irrelevant to the inquiry and issues raised by the Complaint. *Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss at p. 14. ¶ 34.*

MEMORANDUM DECISION AND ORDER                    Page 10 of 13

Exhibit 1
Page 10 of 13

In brief, the Act provides that prior to seeking foreclosure, three conditions must be met: (1) the trust deed, all assignments, and the appointment of successor trustee must be recorded in the mortgage records of the county where the property is located; (2) there must be default; and, (3) the trustee or beneficiary must record a notice of default. See I.C. § 45-1505(1)-(3). The Act also provides that following recordation of the Notice of Default, the trustee shall give notice of the trustee's sale by registered or certified mail. See I.C. § 45-1506(2).

The Notice of Trustee's Sale shall set forth: (a) the names of the grantor, trustee and beneficiary in the trust deed; (b) a description of the property covered by the trust deed; (c) the book and page of the mortgage records or the recorder's instrument number where the trust deed is recorded; (d) the default for which the foreclosure is made; (e) the sum owing on the obligation secured by the trust deed; and, (f) the date, time and place of the sale. See I.C. § 45-1506(4)(a)-(f). There is evidence in this record that shows that Defendants have met the requirements of I.C. § 45-1505(1)-(3), 45-1506(2) and 45-1506(4)(a)-(f). Again, Trotter has not opposed, essentially conceding to, Defendants' argument that they have complied with the Act.

### III. Plaintiff's Motion to Compel

Plaintiff's Motion to Compel is denied, as it is now moot due to the granting of Defendants' Motion to Dismiss.

### IV. Conclusion and Order

Therefore, it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim that would entitle him to relief, and there exist no triable issues of material fact that preclude this Court from granting dismissal. As such, the stays that

were in effect for the January 11th and February 8th, 2010, foreclosure sales are hereby lifted and Defendants' Motion to Dismiss is granted.

It appears to the Court that good cause for the entry of this Order has been shown; now therefore,

IT IS ORDERED, ADJUDGED, AND DECREED that:

Plaintiff's Complaint fails to state a claim upon which relief can be granted as to all causes of action asserted, and there are no genuine issues of material fact existing. For these reasons, this case is dismissed with prejudice. Plaintiff's Motion to Compel is denied, as it is now moot.

IT IS FURTHER ORDERED that the previously entered stays of foreclosure sales (Temporary Restraining Orders) are hereby lifted and vacated.

IT IS FURTHER ORDERED that Defendants will prepare and submit to this Court a judgment consistent with this Memorandum Decision and Order.

DATED this ___2___ day of July, 2010.

_Lansing L. Haynes_
LANSING HAYNES, District Judge

Jul. 2. 2010  4:17PM    FRIEDLANDER HAYNES MITCHELL PETE                No.8254    P. 13/13

## CERTIFICATE OF MAILING

I hereby certify that on the ⟍⟋ day of July, 2010 a true and correct copy of the foregoing was mailed, postage prepaid, or sent by interoffice mail to:

Monica Flood Brennan
MONICA FLOOD BRENNAN, P.C.
608 Northwest Blvd., STE. 101
Coeur d'Alene, ID 83814
Facsimile: 208-676-8288

Lance E. Olsen
ROUTH CRABTREE OLSEN, P.S.
3535 Factoria Blvd SE, STE 200
Bellevue, WA 98006
Facsimile: 425-283-5905

Jeff Barnes
W.J. Barnes, P.A.
c/o International Mediation Associates, Inc.
6655 West Sahara Ave., Ste. B200
Las Vegas, Nevada 89146
No fax provided

Daniel English
Clerk of the District Court

By _Suri Sverdela_
Deputy Clerk

MEMORANDUM DECISION AND ORDER                          Page 13 of 13

Exhibit 1
Page 13 of 13

STATE OF IDAHO
COUNTY OF KOOTENAI } SS
FILED:

2010 NOV 16  PM 3: 54

CLERK DISTRICT COURT

DEPUTY

IN THE DISTRICT COURT OF THE FIRST JUDICIAL DISTRICT OF THE STATE

OF IDAHO IN AND FOR THE COUNTY OF KOOTENAI

| | |
|---|---|
| LESLIE JENSEN EDWARDS,<br><br>    Plaintiff,<br><br>vs.<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a foreign corporation; QUALITY LOAN SERVICE CORP OF WASHINGTON, a foreign corporation; and PIONEER LENDER TRUSTEE SERVICES LLC, an Idaho limited liability company,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CASE NO. CV-10-2745

MEMORANDUM DECISION, FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Monica Flood Brennan, MONICA FLOOD BRENNAN, P.C., for Plaintiff

Jeff Barnes, W.J. BARNES, P.A., for Plaintiff (admitted *pro hac vice*)

Holger Uhl, MCCARTHY & HOLTHUS, LLP, for Defendants

### I. Background

On or about May 18, 2005, Plaintiff Leslie Jensen Edwards ("Edwards") executed

a Note and Deed of Trust in favor of Mortgage Electronic Registration Systems, Inc.

("MERS") as nominee for lender Lehman Brothers Bank, FSB ("Lehman Brothers

Bank"), its assigns and successors. *Amended Complaint at p. 3, ¶¶ 7 and 8.* The Deed of

Trust was recorded May 25, 2005, as Instrument No. 1952437 in the Kootenai County

Recorder's Office. *Supplemental Affidavit of Holger Uhl, Exhibit A; Defendants' Motion*

*to Take Judicial Notice, Exhibit A.*[1]   The Deed of Trust encumbers a piece of real

property located in Kootenai County, Idaho, commonly known as 17287 West

Summerfield Road, Post Falls, Idaho, 83854 (the "Property") and legally described as set

forth on Exhibit A to the Amended Complaint's Exhibit 3.  This property is Edwards'

primary residence. *Amended Complaint at p. 3, ¶ 5.*

In her Amended Complaint for Declaratory and Injunctive Relief, filed June 10,

2010, Plaintiff states that soon after the Note and Deed of Trust were recorded, non-party

Aurora Loan Services, LLC, recorded a Substitution of Trustee by which MERS, as

nominee for lender Gold Mortgage Corporation, purported to substitute the original

trustee, Alliance Title & Escrow Corp., with Fidelity National Title Insurance Company.

*Amended Complaint at p. 4, ¶ 9.*  Plaintiff alleges that Aurora Loan Services, LLC, is not

the original lender and that the Substitution of Trustee is a "fraudulent document, as

'American Gold Mortgage Corporation' was never the lender or the beneficiary, and as

such, Defendant MERS is a party to the perpetration of a fraud in connection with

instituting a fraudulent foreclosure proceeding." *Amended Complaint at p. 4, ¶¶ 10-12.*

Plaintiff also alleges that on or about December 3, 2009, Defendant Quality Loan

Service Corp of Washington ("QLS") recorded an Appointment of Successor Trustee

dated November 30, 2009, whereby MERS, named as beneficiary and nominee for

Lehman Brothers Bank, purported to substitute Defendant Pioneer Lender Trustee

---

[1] This Court notes that Plaintiff has never submitted a copy of the very instrument in question, the Deed of Trust.

MEMORANDUM DECISION AND ORDER                    Page 2 of 20

Exhibit 2
Page 2 of 20

Services, LLC, ("Pioneer") as Trustee. Plaintiff alleges that this appointment is a "legal nullity" both because MERS is not and cannot be the beneficiary and because Alliance Title & Escrow Corp. had already been substituted as the Trustee. *Amended Complaint at pp. 4-5, ¶¶ 13 and 14.*

Plaintiff further provides that on or about December 3, 2009, Defendant QLS caused to be recorded a Notice of Election to Sell Under Deed of Trust whereby Pioneer declared its intent to foreclose on the Property. Plaintiff alleges that this Notice is a "fraudulent document, as there was never, at any time, any 'obligations in favor of' Defendant MERS as Defendant MERS was not the originating lender; it did not lend any money; was not owed any money; and did not extend any credit." *Amended Complaint at p. 5, ¶¶ 14 and 15.* Additionally, Plaintiff alleges that Defendants MERS, QLS, and Pioneer are "thus parties to the filing of a fraudulent document in the public records which was filed for the purpose of furthering a fraudulent foreclosure." *Id., ¶ 16.*

Lastly, Plaintiff alleges that on or about December 7, 2009, Pioneer generated a Notice of Trustee's Sale that claimed that Pioneer was acting as Trustee on behalf of MERS and scheduled the Property for sale. *Id., ¶ 17.* Also, Plaintiff alleges that, at some point, Lehman Brothers Bank filed for bankruptcy and did not have the authority to divest itself of the loan and therefore all actions relating to the foreclosure are without legal authority and are also fraudulent. *Id. at p. 6, ¶ 18.*

On April 27, 2010, Defendants filed their first Motion to Dismiss. On May 5, 2010, this Court entered its Order to Postpone Foreclosure until after the Court's Ruling on Defendants' Motion to Dismiss, as the parties so stipulated to said postponement. As provided above, Plaintiff filed her Amended Complaint on June 10, 2010, and Defendants filed their Motion to Dismiss the Amended Complaint, pursuant to I.R.C.P.

MEMORANDUM DECISION AND ORDER                     Page 3 of 20

Exhibit 2
Page 3 of 20

12(b)(6), 12(b)(7) and 19(a) on July 6, 2010. Defendants, also on that date, filed a Memorandum in Support of their Motion to Dismiss, along with a Motion to Take Judicial Notice of various documents.

On July 20, 2010, Plaintiff filed an Ex Parte Motion to Continue the Motion to Dismiss hearing and to Extend Time to Respond to the Motion to Dismiss, pursuant to I.R.C.P. 56(f). On July 28, 2010, the parties filed a Stipulation to Continue the Motion to Dismiss hearing. On August 6, 2010, Plaintiff filed three documents with this Court: (1) Memorandum in Opposition to the Motion To Dismiss the Amended Complaint; (2) an Affidavit of Leslie Jensen Edwards; and, (3) a Notice of Objection RE: Judicial Notice. On August 9, 2010, Defendants filed a Supplemental Affidavit of Holger Uhl that contains various instruments and documents relating to the non-judicial foreclosure and the Motion to Dismiss.

On August 10, 2010, Defendants filed their Reply Memorandum in Support of their Motion to Dismiss the Amended Complaint. On August 13, 2010, Plaintiff filed a Motion to Strike the Affidavit of Holger Uhl and the Documents Attached Thereto and All Documents filed in Support of the Motion to Dismiss. Further, on that date, Plaintiff filed a Second Motion to Continue the Hearing and Extend Time to Respond to the Motion for Summary Judgment.[2] On August 19, 2010, Plaintiff filed an Affidavit of Charles Horner. On August 20, 2010, this Court granted Plaintiff's Motion to Continue the hearing, pursuant to I.R.C.P. 56(f).

---

[2] All parties have agreed that Defendants' Motion to Dismiss the Amended Complaint is now converted into a Motion for Summary Judgment. Plaintiff agreed to this at oral argument and so provides in her Memorandum in Opposition, and Defendants also agreed to this conversion at oral argument. In any event, matters outside the pleading have been presented to and are not excluded by this Court, in the interests of economy for all and justice. Therefore, this Court will dispose of this matter as a Motion for Summary Judgment.

MEMORANDUM DECISION AND ORDER                                    Page 4 of 20

Exhibit 2
Page 4 of 20

On September 16, 2010, Plaintiff filed the Second Affidavit of Charles Horner.

On September 28, 2010, Defendants filed a Motion to Strike the Affidavits of Charles

Horner, along with a Memorandum in Support of the Motion to Strike.

Oral argument was heard on September 30, 2010, and this Court took all matters

under advisement. This Memorandum Decision shall constitute this Court's findings of

fact and conclusions of law, pursuant to I.R.C.P. 52(a). Any of the following findings of

fact that should be denominated as a conclusion of law shall be deemed to be a

conclusion of law. Any of the following conclusions of law that should be denominated a

finding of fact shall be deemed a finding of fact.

## II. Preliminary Matters

### A. Plaintiff's Motion to Strike and Objection to Taking Judicial Notice

Edwards has objected to this Court taking judicial notice of the public records that

Defendants have requested pursuant to I.R.E. 201. Plaintiff argues that this Court should

not consider evidence in ruling on a Motion to Dismiss brought pursuant to I.R.C.P.

12(b)(6). This argument is moot, as this Court and the parties have agreed that

Defendants' motion is properly brought as a Motion for Summary Judgment, pursuant to

I.R.C.P. 56. Alternatively, this Court does take Judicial Notice of the proffered

documents, pursuant to I.R.E. 201, as they are public records of Kootenai County, Idaho,

the Idaho Secretary of State, the Federal Reserve Board, and the United States

Bankruptcy Court for the Southern District of New York, sources whose accuracy cannot

reasonably be questioned. *See I.R.E. 201(b)*. These documents are also provided for in

the Affidavit of Holger Uhl, wherein he testifies that the documents are true and correct

copies, filed with this Court, and a few of these documents were also submitted by the

Plaintiff. Pursuant to I.R.E. 201(c), this Court takes judicial notice of Defendants'

Exhibit 2
Page 5 of 20

Exhibits A-L, as attached to Defendants' Memorandum in Support of Motion to Dismiss the Amended Complaint and to the Supplemental Affidavit of Holger Uhl.

Edwards also moves this Court for an order striking the Affidavit of Holger Uhl and all documents attached thereto, pursuant to I.R.C.P. 12(f) and I.R.E. 602, 802 and 803. Defendants replied that the documents are properly before this Court as they are true and correct copies of publically recorded documents submitted with an affidavit.

I.R.C.P. 12(f) provides that the Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. This rule is inapplicable, as the documents submitted to this Court were not attached to a pleading, but to an affidavit submitted in support of a motion for summary judgment. Regardless, the documents are material to the proper determination of this case.

I.R.E. 602 requires that a witness must have personal knowledge of the matter being introduced into evidence. In his affidavit, Mr. Uhl testifies that he has personal knowledge of the statements contained herein. Edwards also seeks to strike the proffered documents by arguing that they are hearsay and that no exceptions apply. I.R.E. 803(6), (8), (14) and (15) all provide an exception to the hearsay rule.

Therefore, Plaintiff's Motion to Strike and Objection to this Court taking judicial notice of Defendants' exhibits are denied.

### B. Defendants' Motion to Strike the Affidavits of Charles Horner

Charles Horner has filed two affidavits with this Court, with each one attaching a Mortgage Document Examination & Investigation Report ("Forensic Report") prepared by him and in reference to Edwards' Deed of Trust and Note. Mr. Horner provides a broad review of the various federal laws applicable to a Deed of Trust and limited information applicable to Idaho's Deed of Trust Act.

MEMORANDUM DECISION AND ORDER    Page 6 of 20

Exhibit 2
Page 6 of 18

Defendants argue that the Horner affidavits should be stricken pursuant to I.R.E. 702, as Mr. Horner is not a recognized expert, the Forensic Reports merely provide opinions as to matters of law, and the Reports are irrelevant and therefore violate the best evidence rule. Plaintiff argues that she needs more time to reply to the Motion to Strike.

I.R.E. 702 provides that if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion. Whether a witness is qualified to testify as an expert is largely in the discretion of the trial judge.

This Court recognizes that the matter is one of discretion, and finds that Mr. Horner is an expert witness. Mr. Horner testifies in his affidavit that he is a forensic examiner of mortgage documents and loan materials. Further, he provides that he is a "Member" of the American College of Forensic Examiners Institute. Defendants have not introduced any evidence that Mr. Horner does not possess the knowledge, skill, experience, training, or education to testify on mortgages and home loans.

Further, the opinions provided by Mr. Horner will assist the trier of fact in understanding the evidence, as the evidence in this case is quite unique and difficult to understand, i.e., home loan and foreclosure documents. Therefore, this Court concludes that his testimony is relevant and competent, as to the issues in this particular case.

As such, in this Court's discretion, Mr. Horner is deemed to be an expert witness and his specialized knowledge will assist the trier of fact to understand the evidence in this case. The weight given to the testimony is left to the trier of fact. Therefore, Defendants' Motion to Strike his affidavits is denied.

MEMORANDUM DECISION AND ORDER                    Page 7 of 20

Exhibit 1
Page 7 of 20

### III. Defendants' Motion for Summary Judgment

The gravamen of Plaintiff's Amended Complaint is her allegation that the Defendants have no legal or equitable rights in the Note or Deed of Trust for purposes of foreclosure, and that said Defendants have no legal standing to institute or maintain foreclosure on the Property. She prays for the Court to issue a declaratory judgment so stating and to permanently bar these Defendants from ever seeking to foreclose on the Property. *Amended Complaint at pp. 10-11, ¶ 38.* In reality, Edwards is asking this Court to order the Lender to modify her loan to create payments that she can afford. Counsel for Edwards stated this much at oral argument and Edwards provides the following in her affidavit:

> "On May 18, 2005, I closed on a refinance with Lehman Brothers. I borrowed $345,000 from them to pay off the loans for the construction [of her home]. We started to make payments of $2,700 per month including insurance and escrow taxes. The first payment was made to Aurora Loan Services ... [i]n August of 2009, we were unable to make our mortgage payments due to our investments depreciating, loss of employment and loss and loss (sic) of family assistance, which was previously available. In October, 2009, the bank sent us Notice of Missed Payments. We requested a loan modification ... . I want to pay my loan at a rate that I can afford. I am still willing to do a loan modification."

Affidavit of Leslie Edwards, filed August 6, 2010.

Defendants have moved this Court for summary judgment, arguing that the Amended Complaint does not provide a colorable claim that prevents them from proceeding with a non-judicial foreclosure under Idaho law. After extensive review of the record and the pertinent law, this Court agrees with the Defendants and **grants** their Motion for Summary Judgment for the reasoning explained below.

MEMORANDUM DECISION AND ORDER                    Page 8 of 20

Exhibit 2
Page 8 of 20

## A. **Standards**

Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c); *Bonz v. Sudweeks,* 119 Idaho 539, 541, 808 P.2d 876, 878 (1991).   In ruling upon a motion for summary judgment, all disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the nonmoving party.  *Bonz,* 119 Idaho at 541, 808 P.2d at 878.   The burden of proving the absence of material facts is upon the moving party.  *Petricevich v. Salmon River Canal Co.,* 92 Idaho 865, 868, 452 P.2d 362, 365 (1969).

Once the moving party has properly supported the motion for summary judgment with affidavits, admissions or depositions, it is incumbent on the nonmoving party to present opposing evidence through depositions, discovery responses and affidavits sufficient to create a genuine issue for trial.  I.R.C.P. 56(e);  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986);  *Petricevich,* 92 Idaho at 868, 452 P.2d at 365.

To withstand a motion for summary judgment, the nonmoving party's case must consist of more than speculation, it must create a genuine issue regarding a material fact. *G & M Farms v. Funk Irrigation Co.,* 119 Idaho 514, 517, 808 P.2d 851, 854 (1991).  A mere scintilla of evidence is not enough to create a genuine issue.  *Id.* If the evidence presented by the nonmoving party fails to raise a genuine issue for trial, summary judgment shall be entered against that party.  I.R.C.P. 56(e).

MEMORANDUM DECISION AND ORDER                           Page 9 of 20

Exhibit 2
Page 9 of 20

In considering the evidence presented in support of or opposition to a motion for summary judgment "a court will consider only that material contained in affidavits or depositions which is based upon personal knowledge and which would be admissible at trial." *Petricevich,* at 869, 452 P.2d (1969); I.R.C.P. 56(e). When there is a conflict in the evidence which is presented, a determination should not be made on summary judgment if the credibility can be tested by testimony in court before the trier of fact. *Argyle v. Slemaker,* 107 Idaho 668, 691 P.2d 1283 (Ct.App. 1984).

The purpose of summary judgment proceedings is to eliminate the necessity of trial where facts are not in dispute and where existent and undisputed facts lead to a conclusion of law which is certain. *Berg v. Fairman,* 107 Idaho 441, 444, 690 P.2d 896 (1984).

**B. Discussion**

**1. Defendants have standing to maintain a foreclosure of the Property.**

Edwards argues in her Amended Complaint and Memorandum in Opposition to Defendants' Motion to Dismiss that MERS is not the beneficiary of the Deed of Trust, Lehman Brothers Bank is not the Lender, Aurora Loan Services, LLC, is not the Lender and Pioneer is not the Successor Trustee; therefore, none of these parties have standing to bring forth a foreclosure action as against the Property. Edwards cites this Court to several non-Idaho cases and two cases from the United States Bankruptcy Court for the District of Idaho, *In re Sheridan,* Case No. 08-20381-TLM (Bankr. D. Idaho 2009) and *In re Wilhelm,* Case No. 08-20577-TLM (Bankr. D. Idaho 2009). Edwards argues that "[t]he findings by the Court in Sheridan and Wilhelm represent the current state of the law in Idaho as to the lack of authority on the part of MERS." *Plaintiff's Memorandum in Opposition to Motion to Dismiss Amended Complaint at p. 8.*

MEMORANDUM DECISION AND ORDER                    Page 10 of 20

Exhibit 2
Page 10 of 20

US Bankruptcy Court decisions do not create binding law in the area of mortgage foreclosure in Idaho, and the cases cited by Edwards are not controlling on this Court. Defendants also cite to several non-Idaho cases that provide that MERS may act as a beneficiary and a nominee.  There appears to be a split of opinion on this issue at the federal level that will need to be decided at the federal appellate level, but this Court does not have the authority to create state or federal law. There are no Idaho appellate decisions directly on point to guide this Court and, therefore, this Court relies on Idaho law and the instruments themselves to conclude that MERS is the beneficiary under Edwards' Deed of Trust.

Defendants argue that MERS was the nominee beneficiary as defined in Idaho Code Chapter 15, Title 45, and had the authority to assign its rights to Aurora Bank, FSB, fka Lehman Brothers Bank, who then had the right to appoint a successor trustee, Pioneer. Further, Pioneer was vested with the powers of the original trustee, to include the power of sale upon default.

This Court finds the following facts:  The subject property is commonly known as 17287 West Summerfield Road, Post Falls, Idaho, 83854, and legally described as set forth on Exhibit A to the Amended Complaint's Exhibit 3. The Property is located in Kootenai County, Idaho, and does not exceed forty acres.

On or about October 24, 2003, Edwards executed a Deed of Trust and Note with American Gold Mortgage Corporation as Lender, Alliance Title & Escrow Corp., as Trustee and MERS as Nominee for Lender and Beneficiary for the Property.  Said Deed

of Trust and Note were recorded in the Kootenai County Recorder's Office on October

29, 2003, as Instrument No. 1839358. *Supplemental Affidavit of Holger Uhl, Exhibit J*[3].

On or about June 1, 2005, MERS executed a Substitution of Trustee, wherein

MERS as Beneficiary substituted Fidelity National Title Insurance Company as

Successor Trustee in place of Alliance Title & Escrow Corp. Said instrument was

recorded in the Office of the Kootenai County Recorder's Office on June 21, 2005 as

Instrument No. 1958378. *Supplemental Affidavit of Holger Uhl, Exhibit K and Plaintiff's*

*Amended Complaint, Exhibit 1.*

On or about June 8, 2005, Fidelity National Title Insurance Company as Trustee

executed a Deed of Reconveyance, as the Deed of Trust with MERS and American Gold

Mortgage Corporation "has been paid in full." Said instrument was recorded in the

Office of the Kootenai County Recorder's Office on June 21, 2005, as Instrument No.

1958379. *Supplemental Affidavit of Holger Uhl, Exhibit L.*

This occurred as Edwards refinanced her American Gold Mortgage Corporation

loan with Lehman Brothers Bank. *Affidavit of Leslie Edwards at p. 2, ¶ 2.*

On or about May 18, 2005, Edwards executed **a new** Deed of Trust and Note for

the Property that provides that Lehman Brothers Bank, FSB, is the Lender, Alliance Title

& Escrow as the Trustee and MERS as the Beneficiary and Nominee for the Lender.

Said instrument was recorded in the Office of the Kootenai County Recorder's Office on

May 25, 2005, as Instrument No. 1952437. *Supplemental Affidavit of Holger Uhl,*

*Exhibit A.* The Deed of Trust provides that "MERS is a separate corporation that is acting

solely as nominee for Lender and Lender's successors and assigns. **MERS is the**

---

[3] Citations to the Supplemental Affidavit of Holger Uhl and the attached exhibits are also to the exhibits of
which this Court has taken judicial notice.

MEMORANDUM DECISION AND ORDER                    Page 12 of 20

Exhibit 2
Page 12 of 20

**beneficiary under this Security Instrument**" (emphasis in the original). *See Instrument No. 1952437 at p. 2.* Further, in the Deed of Trust, Edwards acknowledges and agrees that "[t]he beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. *Id. at p. 3.* Additionally, not only did Edwards agree that MERS was designated as the nominee for the Lender and the beneficiary under the Deed of Trust, she also agreed that:

> "MERS holds only legal title to the interests granted by
> Borrower [Edwards] in this Security Instrument, but, if
> necessary to comply with law or custom, MERS (as
> nominee for Lender and Lender's successors and assigns)
> has the right:  to exercise any or all of these interests,
> including but not limited to, the right to foreclose and sell
> the property; and to take any action required of Lender
> including, but not limited to, releasing and cancelling this
> Security Instrument"

*Id.*

Edwards has admitted that she has not made monthly payments on the loan to any party since July of 2009. *Plaintiff's Response to QLS' First Set of Request for Admission, Production of Documents and Interrogatories Propounded to Plaintiff. See Request for Admission No. 22. See also the Affidavit of Leslie Edwards at p. 2, ¶3.*

On or about November 30, 2009, MERS as Beneficiary and Nominee for Lehman Brothers Bank, FSB, executed an Appointment of Successor Trustee, whereby MERS appointed Pioneer as Trustee and QLS as Attorney in Fact for Pioneer.  Said instrument was recorded in the Kootenai County Recorder's Office on December 3, 2009, as Instrument No. 2243744000. *Supplemental Affidavit of Holger Uhl, Exhibit B and Plaintiff's Amended Complaint, Exhibit 2.* QLS is a servicing agent of Pioneer.

On December 3, 2009, Pioneer recorded a Notice of Default and Election to Sell under Deed of Trust with the Kootenai County Recorder's Office, as Instrument No.

MEMORANDUM DECISION AND ORDER                    Page 13 of 20

Exhibit 2
Page 13 of 20

2243745000. Said instrument provided that the reason for the default was Edwards "[f]ailure to make the 8/1/09 payment of principal and interest and all subsequent payments, together with late charges, impounds, taxes, advances and assessments." *Supplemental Affidavit of Holger Uhl, Exhibit D and Plaintiff's Amended Complaint, Exhibit 3.*

On or about December 7, 2009, Pioneer provided Edwards with a Notice of Trustee's Sale. Said Notice provided that the Property would be sold by Pioneer as Trustee and on behalf of MERS on April 8, 2010. *Plaintiff's Amended Complaint, Exhibit 4.*

Pioneer and QLS have permission to operate in the State of Idaho, pursuant to the Idaho Secretary of State. *Supplemental Affidavit of Holger Uhl, Exhibits E and H.*

John M. Clark completed a sworn affidavit on December 30, 2009, wherein he testifies that he posted the Notice of Default and/or Notice of Trustee's Sale at the Property on at least three separate occassions, to wit: 12/11/09, 12/19/09, 12/29/09. *Supplemental Affidavit of Holger Uhl, no exhibit number provided.*

Kelli Buley, printer (principal clerk) for the Coeur d'Alene Press, a newspaper providing service to Kootenai County, Idaho, completed an Affidavit of Publication, wherein she testifies that the Notice of Trustee's Sale was published in the Coeur d'Alene Press for four consecutive weeks commencing on December 23, 2009, and ending on January 13, 2010. *Supplemental Affidavit of Holger Uhl, no exhibit number provided.*

On February 10, 2010, Hue Banh of QLS and on behalf of Pioneer recorded an Affidavit of Mailing Notice of Default and Notice of Sale in the Kootenai County Recorder's Office, as Instrument No. 2252982000. Said Affidavit provides that the Notice of Default and Notice of Trustee's Sale were mailed to Edwards at various current

MEMORANDUM DECISION AND ORDER                    Page 14 of 20

Exhibit 2
Page 14 of 20

and previously known addresses. Additionally, each of the notices were mailed after the Notice of Default and Election to Sell was recorded and at least 120 days before the day fixed in said notice by the Trustee. *Supplemental Affidavit of Holger Uhl, Exhibit C.*

Lehman Brothers Holdings, Inc., filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of New York on September 15, 2008, case number 08-13555. *Supplemental Affidavit of Holger Uhl, Exhibit I.*

Lehman Brothers Bank, FSB, was renamed Aurora Bank, FSB, ("Aurora")[4], which is Lender's Successor, on April 27, 2009. *Supplemental Affidavit of Holger Uhl, Exhibit G.* There is no evidence in this record that shows that Lehman Brothers Bank, FSB, has filed for bankruptcy. Further, there is no evidence that Aurora has filed for bankruptcy. Aurora is a federal savings bank and a separate entity than Lehman Brothers Holding, Inc. *Defendants' Memorandum in Support of the Motion to Dismiss at p. 43.*

This Court makes the following conclusions of law: The Idaho Deed of Trust Act, I.C. § 45-1502 et seq. (the "Act"), sets out the guidelines and procedures for carrying out a non-judicial foreclosure proceeding. A beneficiary is defined in I.C. § 45-1502 as "the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or his successor in interest, and who shall not be the trustee." Further, in that statute, a trustee is defined as "a person to whom the legal title to real property is conveyed by trust deed, or his successor in interest."

I.C. § 45-1504(2) provides that:

> The trustee may resign at its own election or be replaced by the beneficiary. The trustee shall give prompt written notice of its resignation to the beneficiary. The resignation of the trustee shall become effective upon the recording of the notice of resignation in each county in which the deed of

---

[4] Plaintiff appears to have confused Aurora Bank, FSB, with Aurora Loan Services, LLC, a separate entity.

MEMORANDUM DECISION AND ORDER                                      Page 15 of 20

Exhibit 2
Page 15 of 20

trust is recorded. If a trustee is not appointed in the deed of trust, or upon the resignation, incapacity, disability, absence, or death of the trustee, or the election of the beneficiary to replace the trustee, the beneficiary shall appoint a trustee or a successor trustee. Upon recording the appointment of a successor trustee in each county in which the deed of trust is recorded, the successor trustee shall be vested with all powers of an original trustee.

MERS was the beneficiary and also the nominee for Beneficiary Aurora, fka Lehman Brothers Bank, under the Deed of Trust, recorded as Instrument No. 1952437. The Deed of Trust provides "**MERS is the beneficiary under this Security Instrument.**" Also, as the Beneficiary, MERS was entitled to appoint the successor trustee, in this case Pioneer. Pursuant to I.C. § 45-1504(2), upon recording the Appointment of Successor Trustee in the mortgage records of the county in which the trust deed is recorded, the successor trustee shall be vested with all of the powers of the original trustee. The Appointment of Successor Trustee was recorded in Kootenai County, wherein the Deed of Trust is recorded, on December 3, 2009, as Instrument No. 2243744000. Therefore, as a matter of law, this Court finds that Pioneer was vested with the powers of the original trustee, which includes the power of sale.

Pioneer is an authorized Successor Trustee pursuant to I.C. § 45-1504 and QLS is attorney in fact and an agent authorized to act on behalf of Pioneer, pursuant to Idaho Code Chapter 32, Title 26.

Edwards has alleged that the substitution of trustees and change of lenders is fraudulent. There exist no genuine issues of material fact that any of the Defendants in this case have engaged in fraudulent activity. American Gold Mortgage Corporation and Alliance Title & Escrow Corp. were associated with the previous Deed of Trust that was paid off and refinanced with Aurora.

MEMORANDUM DECISION AND ORDER                    Page 16 of 20

Exhibit 2
Page 16 of 20

Edwards also argues that because the loan was securitized there may be no default that would give rise to a foreclosure action or sale, and that her loan obligation may have been liquidated. Further, Edwards argues that Defendants have failed to address the matters of credit enhancements, insurances and applicable setoffs to the claimed amount due; thus, there are issues of material fact concerning whether Aurora was paid 100, 200 or more percent on the loan.

These arguments involve issues relating to federal banking statutes and regulations that this Court cannot address and which would more appropriately be brought in federal court. Edwards has not provided any evidence to support these allegations.

Lastly, this Court concludes that the Note and Deed of Trust may be sold one or more times without prior notice to the Borrower. Further, the Deed of Trust provides that if the borrower breaches any covenant or agreement contained in the Security Instrument, the Property may be sold. There are no genuine issues of material fact that Edwards has breached her agreement with Aurora by not making her monthly payments.

Alternatively, this Court also dismisses Plaintiff's Amended Complaint on the grounds that she has not made any cognizable legal claims. Noticeably absent from Edward's Complaint is any argument that she is not in default, that she has made a payment that was not credited, that the amount owed is inaccurate or any other cognizable legal claim. In fact, Edwards has admitted that she has not made a loan payment in over one year and cannot afford her current loan. Plaintiff has provided this Court with no controlling case law, statute or rule to support her alleged complaints.

MEMORANDUM DECISION AND ORDER                           Page 17 of 20

Exhibit 2
Page 17 of 20

2. **Idaho's Deed of Trust Act, I.C. § 45-1502, et seq.**

Defendants allege that they have complied with the statutory requirements in carrying out the non-judicial foreclosure. Edwards does not argue against this allegation, except to state, "whether Defendants allegedly 'complied with' the Idaho foreclosure procedure is irrelevant to the inquiry and issues raised by the Complaint." *Plaintiff's Memorandum in Opposition to Motion to Dismiss at p. 18.* Mr. Horner provides that Defendants have not complied with I.C. § 45-1505, as Fannie Mae is the current Beneficiary and Aurora Loan Services is merely the servicer. There is no evidence of this in the record. Mr. Horner refers in his affidavit to Exhibit G, but there is no Exhibit G attached to his first affidavit and no exhibits at all attached to his supplemental affidavit. Additionally, Mr. Horner provides that QLS is the Trustee and that I.C. § 45-1504 has not been complied with. As provided above, QLS is the Attorney in Fact and agent for Trustee Pioneer, it is not the Trustee and therefore his argument is incorrect.

In brief, the Act provides that prior to seeking foreclosure, three conditions must be met: (1) the trust deed, all assignments, and the appointment of successor trustee must be recorded in the mortgage records of the county where the property is located; (2) there must be default; and, (3) the trustee or beneficiary must record a notice of default. *See I.C. § 45-1505(1)-(3).* The Act also provides that following recordation of the Notice of Default, the trustee shall give notice of the trustee's sale by registered or certified mail. See I.C. § 45-1506(2).

The Notice of Trustee's Sale shall set forth: (a) the names of the grantor, trustee and beneficiary in the trust deed; (b) a description of the property covered by the trust deed; (c) the book and page of the mortgage records or the recorder's instrument number where the trust deed is recorded; (d) the default for which the foreclosure is made; (e) the

MEMORANDUM DECISION AND ORDER                           Page 18 of 20

Exhibit 2
Page 18 of 20

sum owing on the obligation secured by the trust deed; and, (f) the date, time and place of

the sale. *See I.C. § 45-1506(4)(a)-(f)*. There is evidence in this record, and provided for

in this Court's findings of fact above, that shows that Defendants have met the

requirements of Idaho's Deed of Trust Act.

### IV.  Conclusion and Order

Therefore, there exist no triable issues of material fact that preclude this Court

from granting dismissal of Plaintiff's Amended Complaint.  As such, Defendants' Motion

for Summary Judgment is granted.

It appears to the Court that good cause for the entry of this Order has been shown;

now therefore,

IT IS ORDERED, ADJUDGED, AND DECREED that:

Plaintiff's Complaint fails to state a claim upon which relief can be granted as to

all causes of action asserted, and there are no genuine issues of material fact existing.  For

these reasons, this case is dismissed with prejudice.

IT IS FURTHER ORDERED that the previously entered stay of foreclosure sale

is hereby lifted and vacated.  Defendants are ordered to comply with the requirements as

provided in I.C. § 45-1506A.

IT IS FURTHER ORDERED that Defendants will prepare and submit to this

Court a judgment consistent with this Memorandum Decision and Order.

DATED this 16 day of November, 2010.

Lansing L. Haynes
LANSING HAYNES, District Judge

MEMORANDUM DECISION AND ORDER                    Page 19 of 20

Exhibit 2
Page 19 of 20

## CERTIFICATE OF MAILING

I hereby certify that on the ___16___ day of November, 2010 a true and correct copy of the foregoing was mailed, postage prepaid, or sent by interoffice mail to:

Monica Flood Brennan
MONICA FLOOD BRENNAN, P.C.
608 Northwest Blvd., STE. 101
Coeur d'Alene, ID 83814
Facsimile: 208-676-8288

Holger Uhl
McCarthy & Holthus, LLP
19735 10th Ave., NE, Ste. N-200
Poulsbo, WA 98370
Facsimile: 206-780-6862

Jeff Barnes
W.J. Barnes, P.A.
c/o International Mediation Associates, Inc.
1515 N Federal Highway, STE. 300
Boca Raton, FL  33432
Facsimile: 702-804-8137

Daniel English
Clerk of the District Court

By ___Susan Reed___
Deputy Clerk

MEMORANDUM DECISION AND ORDER                    Page 20 of 20

Exhibit 2
Page 20 of 20

1   **WO**

2

3

4

5

6                   IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   IN RE Mortgage Electronic Registration)         MDL DOCKET NO. 09-2119-JAT
    Systems (MERS) Litigation               )
10  _____        )        **ORDER**

11  This Order Applies to:                   )

12  CV 09-2616-PHX-JAT                        )
    CV 10-78-PHX-JAT                         )
13  CV 10-79-PHX-JAT                         )
    CV 10-80-PHX-JAT                         )
14  CV 10-81-PHX-JAT                         )
    CV 10-630-PHX-JAT                        )
15  _____        )

16

17          In the initial Practice and Procedure Order (Doc. 25), this Court set for the briefing

18  schedule for six above-captioned actions transferred by the Panel's initial CTO.

19          On August 24, 2010, this Court heard oral argument on sixty-five motions to dismiss

20  pertaining to these six member cases.  The motions are as follows:

21          **Motions regarding *Vargas, et al. v. Countrywide Home Loans, et al.*,**

22                          **CV 09-2616-PHX-JAT:**

23          (1) Citimortgage, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint and

24  Joinder in Certain Other Defendants' Motions to Dismiss (Doc. 262);

25          (2) GE Money Bank's Motion to Dismiss Plaintiffs' First Amended Class Action

26  Complaint (Doc. 285);

27

28

Exhibit 3
Page 1 of 27

1    (3) Motion of Defendants National City Bank, National City Mortgage, National City

2    Corporation and PNC Financial Services Group, Inc. to Dismiss Count Seven of the First

3    Amended Complaint (Doc. 292);

4    (4) Defendant MortgageIT, Inc.'s Motion to Dismiss First Amended Complaint and

5    Joinder in Certain Other Defendants' Motion to Dismiss (Doc. 299);

6    (5) JPMorgan Chase Bank, N.A.'s Motion to Dismiss Plaintiffs' First Amended

7    Complaint [#5 in *Vargas*] and Joinder in Certain Other Defendants' Motions to Dismiss

8    (Doc. 309);

9    (6) Certain Defendants' Motion to Dismiss First Amended Class Action Complaint

10   (Doc. 314);

11   (7) Defendants MERSCORP, Inc. and Mortgage Electronic Registration Systems,

12   Inc.'s Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (Doc. 324).

13   **Motions regarding *Lopez, et al. v. Executive Trustee Services, LLC, et al.*,**

14   **CV 10-78-PHX-JAT:**

15   (8) Citimortgage, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint

16   [#59-1] and Joinder in Certain Other Defendants' Motions to Dismiss (Doc. 260);

17   (9) GE Money Bank's Motion to Dismiss Plaintiffs' Second Amended Class Action

18   Complaint (Doc. 281);

19   (10) Motion of Defendants National City Bank, National City Mortgage, National

20   City Corporation and PNC Financial Services Group, Inc. to Dismiss Counts Five and Six

21   of the Second Amended Complaint (Doc. 291);

22   (11) Motion to Dismiss Second Amended Complaint Against T.D. Service Company

23   (Doc. 297);

24   (12) JPMorgan Chase Bank, N.A.'s Motion to Dismiss Plaintiffs' Second Amended

25   Complaint [#419 in *Lopez*] and Joinder in Certain Other Defendants' Motions to Dismiss

26   (Doc. 308);

27   (13) Certain Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint

28   (Doc. #316);

Exhibit 3
Page 2 of 27

1    (14) National Default Servicing Corp.'s Motion to Dismiss for Failure to State a

2    Claim for Relief or, in the Alternative for More Definite Statement and/or to Strike Portions

3    of Second Amended Complaint (Doc. 318);

4    (15) Defendants MERSCORP, Inc. and Mortgage Electronic Registration Systems,

5    Inc.'s Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint (Doc. 331).

6    **Motions regarding *Goodwin, et al. v. Executive Trustee Services, LLC, et al.*,**

7    **CV 10-79-PHX-JAT:**

8    (16) Citimortgage, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint

9    [#45-1] and Joinder in Certain Other Defendants' Motions to Dismiss (Doc. 259);

10    (17) Defendant Deutsche Bank National Trust Company's Motion to Dismiss

11    Plaintiffs' Second Amended Class Action Complaint (Doc. 266);

12    (18) Defendant Ocwen Loan Servicing, LLC's Motion to Dismiss Second Amended

13    Complaint (Doc. 268);

14    (19) Defendant Western Progressive Trustee LLC's Motion to Dismiss Second

15    Amended Complaint (Doc. 269);

16    (20) American Home Mortgage Servicing, Inc.'s Motion to Dismiss Plaintiffs' Second

17    Amended Class Action Complaint (Doc. 278);

18    (21) GE Money Bank's Motion to Dismiss Plaintiffs' Second Amended Class Action

19    Complaint (Doc. 282);

20    (22) Defendant Litton Loan Servicing LP's Motion to Dismiss Second Amended Class

21    Action Complaint (Doc. 286);

22    (23) Motion of Defendants National City Bank, National City Mortgage, National

23    City Corporation and PNC Financial Services Group, Inc. to Dismiss Counts Six and Seven

24    of the Second Amended Complaint (Doc. 290);

25    (24) WMC Mortgage Corp.'s Motion to Dismiss Plaintiffs' Second Amended Class

26    Action Complaint (Doc. 296);

27    (25) Motion to Dismiss Second Amended Complaint Against T.D. Service Company

28    (Doc. 298);

- 3 -

Exhibit 3
Page 3 of 27

1    (26) Motion to Dismiss Second Amended Complaint Against I.B. Property Holdings,

2  L.L.C. (Doc. 300);

3    (27) Aztec Foreclosure Corporation and National Default Servicing Corp.'s Motion

4  to Dismiss for Failure to State a Claim for Relief (Doc. 304);

5    (28) JPMorgan Chase Bank, N.A.'s Motion to Dismiss Plaintiffs' Second Amended

6  Complaint [#443 in *Goodwin*] and Joinder in Certain Other Defendants' Motions to Dismiss

7  (Doc. #305);

8    (29) Bank of New York's Motion to Dismiss (Doc. 310);

9    (30) Certain Defendants' Motion to Dismiss (Doc. 320);

10    (31) Defendants MERSCORP, Inc. and Mortgage Electronic Registration Systems,

11  Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 327);

12    (32) Defendant MTC Financial, Inc. dba Trustee Corp's Motion to Dismiss Plaintiffs'

13  Second Amended Class Action Complaint for Failure to State a Claim for Relief, or,

14  Alternatively, Motion for Summary Judgment (Doc. 479).

15    **Motions regarding *Green, et al. v. Countrywide Home Loans, Inc., et al.*,**

16    **CV 10-80-PHX-JAT:**

17    (33) Citimortgage, Inc. and CR Title Services, Inc.'s Motion to Dismiss Plaintiffs'

18  First Amended Complaint [#35] and Joinder in Certain Other Defendants' Motions to

19  Dismiss (Doc. 257);

20    (34) American Home Mortgage Servicing, Inc.'s Motion to Dismiss Plaintiffs' First

21  Amended Class Action Complaint (Doc. 279);

22    (35) GE Money Bank's Motion to Dismiss Plaintiffs' First Amended Class Action

23  Complaint (Doc. 283);

24    (36) Defendant Litton Loan Servicing LP's Motion to Dismiss First Amended Class

25  Action Complaint (Doc. 287);

26    (37) Motion of Defendants National City Bank, National City Mortgage, National

27  City Corporation and PNC Financial Services Group, Inc. to Dismiss Counts Two, Three and

28  Four of the First Amended Complaint (Doc. 294);

Exhibit 3
Page 4 of 27

1    (38) The Bank of New York Mellon's Motion to Dismiss Plaintiffs' First Amended

2    Complaint [#35] and Joinder In Certain Other Defendants' Motions to Dismiss (Doc. 302);

3    (39) JPMorgan Chase Bank, N.A.'s Motion to Dismiss Plaintiffs' First Amended

4    Complaint [#35] and Joinder in Certain Other Defendants' Motions to Dismiss (Doc. 307);

5    (40) NdeX West, LLC's Motion to Dismiss Plaintiffs' First Amended Class Action

6    Complaint (Doc. 317);

7    (41) National Default Servicing Corp.'s Motion to Dismiss for Failure to State a

8    Claim for Relief, or, in the Alternative for More Definite Statement and/or to Strike Portions

9    of the First Amended Complaint (Doc. 312);

10    (42) Certain Defendants' Motion to Dismiss (Doc. 321);

11    (43) Defendants MERSCORP, Inc. and Mortgage Electronic Registration Systems,

12    Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 333).

13    **Motions regarding *Dalton, et al. v. Citimortgage, Inc., et al.,***

14    **CV 10-81-PHX-JAT:**

15    (44) Citimortgage, Inc. and CR Title Services, Inc.'s Motion to Dismiss Plaintiffs'

16    Complaint and Joinder in Certain Other Defendants' Motions to Dismiss (Doc. 258);

17    (45) Defendant Deutsche Bank National Trust Company's Motion to Dismiss

18    Plaintiffs' Class Action Complaint and Joinder in the Motion to Dismiss Filed by Defendant

19    American Home Mortgage Servicing, Inc. (Doc. 267);

20    (46) American Home Mortgage Servicing, Inc.'s Motion to Dismiss Plaintiffs' Class

21    Action Complaint (Doc. 277);

22    (47) GE Money Bank's Motion to Dismiss Plaintiffs' Class Action Complaint (Doc.

23    284);

24    (48) T.D. Service Company's Renewed Motion to Quash Service of Summons and

25    Complaint and Renewed Motion to Dismiss Class Action Complaint (Doc. 293);

26    (49) Motion of Defendants National City Bank, National City Mortgage, National

27    City Corporation and PNC Financial Services Group, Inc. to Dismiss Counts Two, Three and

28    Four of the Complaint (Doc. 295);

Exhibit 3
Page 5 of 27

1    (50) JPMorgan Chase Bank, N.A., EMC Mortgage Corporation, and California

2  Reconveyance Company's Motion to Dismiss Plaintiffs' Complaint and Joinder in Certain

3  Other Defendants' Motions to Dismiss (Doc. 306);

4    (51) Defendant MetLife Bank, N.A.'s Motion to Dismiss and Joinder in GMAC

5  Mortgage, LLC's Motion to Dismiss and Certain Defendants' Motion to Dismiss Filed By

6  Bank of America, N.A., et al. (Doc. 319);

7    (52) Defendants MERSCORP, Inc. and Mortgage Electronic Registration Systems,

8  Inc.'s Motion to Dismiss Plaintiffs' Class Action Complaint (Doc. 325);

9    (53) Certain Defendants' Motion to Dismiss (Doc. 328);

10    (54) Cal-Western Reconveyance Corporation's Motion to Dismiss Class Action

11  Complaint, or in the Alternative for a More Definite Statement; Motion to Strike Portions of

12  Class Action Complaint (Doc. 423).

13    **Motions regarding *Robinson, et al. v. Citimortgage, Inc., et al.*,**

14    **CV 10-630-PHX-JAT:**

15    (55) Citimortgage, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint and

16  Joinder in Certain Other Defendants' Motions to Dismiss (Doc. 261);

17    (56) GE Money Bank's Motion to Dismiss Plaintiffs' First Amended Class Action

18  Complaint (Doc. 280);

19    (57) Motion of Defendants National City Bank, National City Mortgage, National

20  City Corporation and PNC Financial Services Group, Inc. to Dismiss Count Eight of the First

21  Amended Complaint (Doc. 288);

22    (58) JPMorgan Chase Bank, N.A.'s Motion to Dismiss Plaintiffs' First Amended

23  Complaint [#91 in *Robinson*] and Joinder in Certain Other Defendants' Motions to Dismiss

24  (Doc. 303);

25    (59) Certain Defendants' Motion to Dismiss Plaintiff's First Amended Complaint

26  (Doc. 311);

27    (60) Defendants MERSCORP, Inc. and Mortgage Electronic Registration Systems,

28  Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 326).

- 6 -

Exhibit 3
Page 6 of 27

**Motions addressing multiple cases:**

(61) Motion of the Federal Housing Finance Agency as Conservator of Fannie Mae and Freddie Mac to Dismiss (Doc. 264) (Concerning all six);

(62) Motion of Defendants GMAC Mortgage, LLC, Executive Trustee Services, Inc., and Homecomings Financial, LLC to Dismiss All Plaintiffs' Claims Retained by the Court in these Six Cass Actions (Doc. 276) (Concerning all six);

(63) Motion to Dismiss Plaintiffs' Complaints Filed by Defendants Aurora, Old Republic, and Saxon (Doc. 289) (Concerning *Goodwin*, *Green*, and *Dalton*);

(64) Motion to Dismiss By Shareholder Defendants (Doc. 315) (Concerning all six);

(65) Motion to Dismiss Plaintiffs' Complaints Filed by Quality Loan Service Corporation (Doc. 343) (Concerning *Goodwin*, *Green*, and *Dalton*).

## I. BACKGROUND

On April 1, 2009, Plaintiff Alfonso Vargas filed a putative class action. *Vargas, et al. v. Countrywide Home Loans, et al.*, CV 09-2616-PHX-JAT, Doc. 1. On July 27, 2009, a First Amended Class Action Complaint was filed. *Id.*, Doc. 5. In its March 23, 2010 Order, this Court retained jurisdiction over Plaintiffs' Seventh Claim and Eleventh Claim for Relief, which pertain to the formation and operation of MERS. All other claims for relief were remanded to the United States District Court for the Central District of California.

On April 8, 2009, Plaintiff Josefa Lopez filed a putative class action. *See Lopez, et al. v. Executive Trustee Services, LLC, et al.*, CV 10-78-PHX-JAT, Doc. 1. On May 4, 2009, a First Amended Class Action Complaint was filed adding nine plaintiffs. *See id.*, Doc. 35. Plaintiffs filed a Second Amended Complaint on February 3, 2010. Doc. 59.[1] In its March 23, 2010 Order, this Court retained jurisdiction over Plaintiffs' Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Claims for relief, which pertain to the formation and operation

---

[1] Unless otherwise noted, all docket numbers refer to the docket of *In re Mortgage Electronic Registration Systems*, MDL Docket No. 09-2119-JAT.

- 7 -

Exhibit 3
Page 7 of 27

1  of MERS. All other claims for relief were remanded to the United States District Court for

2  the District of Nevada.

3        On June 9, 2009, Plaintiff Aleta Goodwin, along with several other plaintiffs, filed a

4  putative class action in the District of Nevada. *Goodwin, et al. v. Executive Trustee Services,*

5  *LLC, et al.*, CV 10-79-PHX-JAT, Doc. 1. On June 24, 2009, a First Amended Class Action

6  Complaint was filed, adding six additional plaintiffs. *See id.*, Doc. 47. On January 8, 2010,

7  Judge Reed of the District of Nevada granted Defendants' Motions to Dismiss (along with

8  other defendants. motions to dismiss) and granted Plaintiffs leave to amend their complaint.

9  *Goodwin v. Executive Trustee Services, LLC*, No. 3:09-CV-306-ECR-PAL, 2010 WL 234786

10  (D. Nev. Jan. 8, 2010), at \*9-\*10. In particular, Judge Reed dismissed the unjust enrichment

11  claim because Plaintiffs had entered into express, written contracts and thus could not state

12  a claim. *Id.* at \*7-\*8. Judge Reed noted that he lacked jurisdiction over the claims that were

13  transferred to this Court. *Id.* at \*10. On January 29, 2010, Plaintiffs filed the Second

14  Amended Class Action complaint. Doc. 45-1. In an order dated March 23, 2010, this Court

15  retained the Third, Fourth, Sixth, and Seventh Claims for Relief and parts of the Second,

16  Eighth, and Ninth Claims for Relief that relate to the formation or operation of MERS. All

17  other claims for relief were remanded to the United States District Court for the District of

18  Nevada.

19        On July 10, 2009, Plaintiff Joseph Green, along with 30 others, filed a putative class

20  action. *Green, et al. v. Countrywide Home Loans, Inc., et al.*, CV 10-80-PHX-JAT, Doc. 1.

21  On January 8, 2010, Judge Reed of the District of Nevada granted all defendants' motions

22  to dismiss and denied Plaintiffs leave to amend their complaint. See Doc. 283-1. In this

23  Court's March 23, 2010 Order, this Court retained jurisdiction over the First, Third and

24  Fourth Claims for Relief and parts of the Second, Fifth, and Sixth Claims for Relief as they

25  relate to the formation and operation of MERS. All other claims for relief were remanded

26  to the United States District Court for the District of Nevada.

27        On September 14, 2009, Plaintiff Lacy J. Dalton, along with over eighty other

28  plaintiffs, filed a putative class action in the District of Nevada. *Dalton, et al. v.*

Exhibit 3
Page 8 of 27

1    *Citimortgage, Inc., et al.*, CV 10-81-PHX-JAT, Doc 1. In an order dated March 23, 2010,

2    this Court retained claims for relief 1, 3 and 4, retained-in-part claims for relief 2, 5 and 6 to

3    the extent they involved allegations involving the function or operation of MERS. All other

4    claims for relief were remanded to the United States District Court for the District of Nevada.

5         On April 21, 2009, Plaintiffs Jonathan Robinson and Sally Robinson-Burke filed this

6    lawsuit, asserting multiple statutory and common law claims. *Robinson-Burke, et al. v. GE*

7    *Money Bank, et al.*, CV 09-227-TUC-JMR, Doc. 1. On June 19, 2009, Plaintiffs filed the

8    First Amended Class Action Complaint, which added two new plaintiffs. *See id.*, Doc. 91.

9    In an order dated March 23, 2010, this Court retained the Eighth Claim for Relief, and parts

10   of the Tenth and Eleventh Claims for Relief which related to formation and operation of

11   MERS in a separately captioned action, *Robinson, et al. v. GE Money Bank, et al.*, CV 10-

12   630-PHX-JAT. All other claims for relief were remanded to the Honorable Judge John M.

13   Roll of the United States District Court for the District of Arizona.

14        Defendants have now filed the above listed sixty-five motions to dismiss. Nearly all

15   seek to dismiss Plaintiffs' complaints for failure to state a claim under Rule 12(b)(6) and

16   some also advance other theories. As all six class action complaints share nearly identical

17   causes of action, the Court will group similar claims together and address the 12(b)(6)

18   motions pertaining to each set of claims.

19                              **II. LEGAL STANDARD**

20        "A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a claim." *Navarro*

21   *v. Block*, 250 F.3d 7129, 732 (9th Cir.2001). "To survive a motion to dismiss, a complaint

22   must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

23   plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl.*

24   *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a

25   'probability requirement,' but it asks for more than a sheer possibility that a defendant has

26   acted unlawfully." *Iqbal*, 129 S.Ct. at 1949. "Where a complaint pleads facts that are

27   'merely consistent with' a defendant's liability, it 'stops short of the line between possibility

28   and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

Exhibit 3
Page 9 of 27

1    "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

2    detailed factual allegations, a plaintiff's obligation to provide the grounds of entitlement to

3    relief requires more than labels and conclusions, and a formulaic recitation of the elements

4    of the cause of action will not do." *Twombly*, 550 U.S. at 545 (internal quotations, citations

5    and alterations omitted). "Determining whether a complaint states a plausible claim for relief

6    . . . [is] a context-specific task that requires the reviewing court to draw on its judicial

7    experience and common sense. But where the well-pleaded facts do not permit the court to

8    infer more than the mere possibility of misconduct, the complaint has alleged-but it has not

9    'show[n]'-'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed. Rule.

10   Civ. P. 8(a)(2)) (citation omitted).

11        Under Rule 9(b), plaintiffs have an even higher pleading standard in all allegations

12   of fraud, especially in multi-defendant cases such as these. The Ninth Circuit has repeatedly

13   emphasized that "Rule 9(b) does not allow a complaint to merely lump multiple defendants

14   together but require[s] plaintiffs to differentiate their allegations when suing more than one

15   defendant . . . and inform each defendant separately of the allegations surrounding his alleged

16   participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (citation

17   omitted); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008) ("membership

18   in an association does not render an association's members automatically liable" for a

19   conspiracy); *N. Cal. Pharm. Ass'n v. United States*, 306 F.2d 379, 388-89 (9th Cir. 1962)

20   (trade association membership "does not mean, however, that every member of the

21   Association, by reason of his membership alone, becomes a coconspirator").

22                          **III. WRONGFUL FORECLOSURE**

23        Plaintiffs assert claims for wrongful foreclosure in *Goodwin, Lopez, Green*, and

24   *Dalton*. Each claim fails to state a claim as a matter of law for at least two reasons.

25        *A. Failure to Allege Lack of Default*

26        First, Nevada law is clear that "[a]n action for the tort of wrongful foreclosure will lie

27   if the trustor or mortgagor can establish at the time the power of sale was exercised or the

28   foreclosure occurred, no breach of condition or failure of performance existed on the

- 10 -

Exhibit 3
Page 10 of 27

1    mortgagor or trustor's part which would have authorized the foreclosure or exercise of the

2    power of sale." *Ernestburg v. Mortgage Investors Group*, No. 2:08-cv-01304-RCJ-RJJ, 2009

3    WL 160241, at *6 (D. Nev. Jan. 22, 2009) (internal citations and quotations omitted). The

4    plaintiff must establish that they were not "in default when the power of sale was exercised."

5    *Id.* (citing *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev. 1983)).

6    Furthermore, a claim for wrongful foreclosure does not arise until the power of sale is

7    exercised. *Collins*, 662 P.2d at 623.

8            *Green* Plaintiffs admit that they have breached their loan obligations:

9    "Borrower/Plaintiffs did not pay the payments agreed in the 'Note' . . ." Doc. 35, ¶ 92. In

10   *Lopez*, Plaintiff Lopez "was unable to continue making payments" and a Notice of Default

11   was recorded. Doc. 59-1, ¶¶ 58, 63. In fact, the *Lopez* Amended Complaint admits that

12   every named plaintiff had been defaulted or was otherwise behind in their payments. Doc.

13   59-1, ¶¶ 71, 79, 88, 99, 109, 118. Similarly, the *Dalton* complaint alleges that at least one

14   plaintiff could "no longer pay the payments" (*see* 10-81-PHX-JAT, Doc. 2, ¶ 138 (a)) and

15   does not make any allegation that any plaintiff made the payments agreed upon under the

16   terms of their loans. The *Goodwin* Second Amended Complaint alleges that at least one

17   plaintiff "ceased making payments" (*see* Doc. 54-4, ¶ 134 (b)) and does not make any

18   allegation that any plaintiff made the payments agreed upon under the terms of their loans.

19   By failing to plead that their loans are not in default, all of Plaintiffs' claims for wrongful

20   foreclosure are barred as a matter of law and will be dismissed for failure to state a claim.

21   Further, for many of the claims in these actions, Plaintiffs do not allege that the power of sale

22   has been exercised. For these plaintiffs, these claims for wrongful foreclosure are premature

23   and not actionable.

24           *B. MERS and MERS-appointed trustees have power to foreclose*

25           Even if Plaintiffs' claims for wrongful foreclosure were not barred by their failure to

26   plead absence of default, Plaintiffs' claims suffer other deficiencies. Plaintiffs have failed

27   to allege facts upon which the Court could draw the reasonable inference that the foreclosure

28   trustees were not properly appointed and thus lacked the power to exercise the power of sale.

- 11 -

Exhibit 3
Page 11 of 27

1   Plaintiffs' "split the note" theory has been recognized by several courts in are particular
2   context and to a limited extent. MERS has been found to be less than a traditional
3   beneficiary in that it holds the deed of trust, but not the accompanying mortgage note and the
4   payments made on account of such loans. *See In re Hawkins*, No. BK-S-07-13593-LBR,
5   2009 WL 901766 (Bankr. D. Nev. Mar. 31, 2009). This splitting of the note from the deed
6   of trust does affect the parties' legal rights and thus, when MERS or a participant in the
7   MERS system has needed a Court to grant affirmative relief—for example, when it needs
8   relief from an automatic stay in a bankruptcy court—Courts have not granted that relief. *See*
9   *In re Hawkins* (denying relief from automatic state in bankruptcy proceedings); *In re Vargas*,
10  396 B.R. 511, 517 (Bankr. C.D. Cal. 2008) (same); *Bellistri v. Ocwen Loan Servicing, L.L.C.*,
11  284 S.W.3d 619 (Mo. Ct. App. 2009) (denying relief to a foreclosure trustee appointed by
12  MERS for lack of "interest" in the property).

13          However, the situation in the cases before the Court differ in one important respect:
14  they concern non-judicial foreclosures under Nevada law. "Defendants do not need to
15  produce the note to the property in order to proceed with a non-judicial foreclosure." *Urbina*
16  *v. Homeview Lending Inc.*, 681 F. Supp. 2d 1254 (D. Nev. 2009) (dismissing Plaintiffs'
17  allegations that Defendants did not possess the original note); *see also Mansour v.*
18  *Cal-Western Reconveyance Corp.*, 618 F.Supp.2d 1178, 1181 (D. Ariz. 2009) (rejecting
19  similar "show me the note" argument under Arizona's non-judicial foreclosure law and
20  collecting cases with similar holdings).

21          Plaintiffs further argue that when "the note is split from the deed of trust, then the note
22  becomes unsecured and a person holding only the note lacks the power to foreclose and a
23  person holding only a deed of trust suffers no default because only the holder of the note is
24  entitled to payment on it." *See, e.g., Dalton* Complaint, CV 10-81-PHX-JAT, Doc. 3 at 18.
25  Plaintiffs, however, fail to allege any facts in their amended complaint that would support
26  such a theory. Indeed, the deeds of trust state that MERS will serve as the nominee for the
27  original lender as well as the original lender's successors and assigns. *See, e.g.*, the Casas-
28  Martinez Deed of Trust, Doc. 352 at 25. Thus, from the very language of the deeds of trust,

- 12 -

Exhibit 3
Page 12 of 27

1    to which Plaintiffs agreed in entering into their home loan transaction, MERS is still acting

2    as the nominee for the current holder of the promissory note.  Plaintiffs have failed to allege

3    any facts suggesting that MERS is not the nominee of the current owner of the promissory

4    note; nor do Plaintiffs allege any facts supporting their assertion that the promissory note and

5    the deed of trust have been bifurcated. Plaintiffs have not cited any legal authority where the

6    naming of MERS—and the consequent "splitting of the note"—was cause to enjoin a

7    non-judicial foreclosure as wrongful.  Indeed Nevada case law universally holds that these

8    deeds are enforceable.   *See Orzoff v. MERS*, No. 2:08-cv-01512, 2009 WL 4643229, at *6

9    (D. Nev. Mar. 26, 2009) ("Plaintiff has cited no authority that is controlling upon this Court

10   that holds MERS cannot have standing as a nominee beneficiary in connection with a

11   nonjudicial foreclosure proceeding under Nevada law. This Court has previously determined

12   that MERS does have such standing."); *Vazquez v. Aurora Loan Servs.*, No 2:08-cv-01800,

13   slip op. at 2 (D. Nev. Mar. 30, 2009) (loan documents sufficiently demonstrated standing by

14   Defendants, including MERS, "with respect to the loan and the foreclosure"); *Gonzalez v.

15   Home American Mortgage Corp.*, Case No. 2:09-cv-00244, slip op. at 7-9 (D. Nev. Mar. 12,

16   2009) (MERS and successor trustee have the power to initiate non-judicial foreclosure

17   without presenting the note); *Ramos v. MERS, Inc.*, Case No. 2:08-cv-1089-ECR-RJJ, 2009

18   WL 5651132, at *3 (D. Nev. Mar. 5, 2009) ("under the deed of trust, MERS was empowered

19   to foreclose on the property and to appoint [a] substitute trustee for purpose of conducting

20   the foreclosure").  Therefore, for this additional reason, Plaintiffs' claims for wrongful

21   foreclosure fail to state a claim.

22         In sum, Plaintiffs' actions for wrongful foreclosure are all dismissed for failure to state

23   a claim.

24

25

26

27   / / /

28   / / /

- 13 -

Exhibit 3
Page 13 of 27

## III. CONSPIRACY TO COMMIT WRONGFUL FORECLOSURE

*A.    Lack of Underlying Claim*

Plaintiffs also assert claims for conspiracy to commit wrongful foreclosure in *Goodwin, Lopez, Green,* and *Dalton.*[2]  Since Plaintiffs fail to state a claim for wrongful foreclosure, their claims for conspiracy to commit wrongful foreclosure also must fail. It is well settled that a plaintiff cannot prevail on a claim for conspiracy if the underlying claim is defective. *Grisham v. Philip Morris USA*, 403 F.3d 631, 635 (9th Cir. 2000) (claim for civil conspiracy fails if underlying cause of action fails). "Civil conspiracy is not an independent cause of action—it must arise from some underlying wrong." *Paul Steelman Ltd. v. HKS, Inc.*, No. 2:05-cv-01330-BES-RJJ, 2007 WL 295610, at *3 (D. Nev. Jan. 26, 2007) ("having concluded that Plaintiffs' claim of tortious interference is not actionable as pleaded, Steelman's civil conspiracy claim must also fail") (citing *Sahara Gaming Corp. v. Culinary Workers Union Local 226*, 984 P.2d 164, 165 (Nev. 1999)).  Accordingly, because plaintiffs have not and cannot present a valid claim for wrongful foreclosure, these claims are dismissed as a matter of law.

*B.    Failure to Allege Specific Facts to Support Inference of a Conspiracy*

Regardless of the merits of Plaintiffs' underlying claims for fraud, Plaintiffs' claim that Defendants conspired to commit wrongful foreclosure is insufficient both for a failure to plead conspiracy with the requisite particularity and for a failure to plead an agreement to participate in the wrongful foreclosure.

For a conspiracy-to-defraud action to lie under Nevada law, a plaintiff must plead and prove that there is: "(1) a conspiracy agreement . . . ; (2) an overt act of fraud in furtherance of the conspiracy; and (3) resulting damages to the plaintiff." *Jordan v. State ex rel. Dept. of Motor Vehicles and Pub. Safety*, 110 P.3d 30, 51 (Nev. 2005).  "To prevail in a civil

---

[2] The claims in *Green* and *Dalton* are titled: "Conspiracy to Commit Wrongful Foreclosure by Creation, Operation and Use of the MERS System." The claims in *Goodwin* and *Lopez* are titled: "Conspiracy to Commit Wrongful Foreclosure Related to the MERS System."

- 14 -

Exhibit 3
Page 14 of 27

conspiracy action, a plaintiff must prove an agreement between the tortfeasors, whether explicit or tacit." *GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001). Thus, to maintain a viable conspiracy claim a plaintiff must allege with sufficient factual particularity the "specific time, place, or person involved in the alleged conspiracies to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (quotations and citation omitted). Put another way, plaintiffs must plead the "who, what, when, where and how of the misconduct charged" necessary to satisfy the requirements of Federal Rule of Civil Procedure 9(b). *See Gowen v. Tiltware LLC*, No. 2:08-CV-1581, 2009 WL 1441653, at *9 (D. Nev. May 19, 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Specifically, "a plaintiff must allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement. It is not enough to show that defendants might have had a common goal unless there is a factually specific allegation that they directed themselves towards this wrongful goal by virtue of a mutual understanding or agreement." *S. Union Co. v. Sw. Gas Corp.*, 165 F.Supp.2d 1010, 1020-21 (D. Ariz. 2001) (quoting *Alfus v. Pyramid Technology Corp.*, 745 F.Supp. 1511, 1521 (N.D. Cal. 1990)).

Plaintiffs allege that Defendants: (1) formed an association to conspire in order to deprive Plaintiffs of their property; (2) knew Plaintiffs would be unable to pay the loans and, thus, Defendants would be in a position to seize Plaintiffs' real property through foreclosure; and (3) targeted Plaintiffs for the purpose of misrepresenting the terms of the loans in order to seize Plaintiffs' properties. However, Plaintiffs do not plead any of these allegations with sufficient factual allegations. Plaintiffs have failed to plead how or even when Defendants formed this purported association to conspire. Neither have Plaintiffs included any factual allegations pertaining to how Defendants targeted Plaintiffs. Plaintiffs' allegations amount to a claim that Defendants *somehow* formed a conspiracy with the intent to provide Plaintiffs with a loan, the terms of which they could not afford, thus permitting Defendants to gain control of the properties through foreclosure. "But terms like 'conspiracy,' or even 'agreement,' are border-line: they might well be sufficient in conjunction with a more

- 15 -

Exhibit 3
Page 15 of 27

1  specific allegation–for example, identifying a written agreement or even a basis for inferring
2  a tacit agreement–but a court is not required to accept such terms as a sufficient basis for a
3  complaint. The case law on this point is ample." *DM Research, Inc. v. Coll. of Am.*
4  *Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999) (cited with approval in *Twombly*, 550 U.S. at
5  557). Plaintiffs have failed to provide any specific, factual allegations inferring even a tacit
6  agreement. As such, Plaintiffs' claims for conspiracy fall short of the requirements of Rule
7  9(b), *Twombly*, and *Iqbal*.

8         Plaintiffs' claim for conspiracy to commit wrongful foreclosure fails both because
9  Plaintiffs have not stated a claim for the underlying tort–wrongful foreclosure–and because
10 Plaintiffs fail to state the basic elements of conspiracy. Thus, the Court will grant the
11 motions to dismiss these claims.

12 **IV. CONSPIRACY TO COMMIT FRAUD RELATED TO THE MERS SYSTEM**

13        In all six actions, Plaintiffs attempt to state a claim for Conspiracy to Commit Fraud
14 Related to the MERS® System.[3] In these claims, Plaintiffs assert that various named
15 Defendants conspired to commit fraud through the MERS system. From the complaints,
16 Plaintiffs' claims for conspiracy to commit fraud appears to be an attack on the legitimacy
17 of the MERS system itself. A nearly identical claim for Conspiracy to Commit Fraud
18 Related to the MERS® System was dismissed with prejudice by this Court in *Cervantes v.*
19 *Countrywide Home Loans*, CV 09-517-PHX-JAT, 2009 WL 3157160 (D. Ariz. Sep. 24,
20 2009), because no facts were alleged showing any fraud was committed by MERS or in the
21 MERS system. In an effort to distinguish the present cases from *Cervantes*, Plaintiffs, in
22 their responses, argue that they "have not alleged that the MERS system is fraudulent, and
23 Plaintiffs have not alleged that MERS committed any fraud" (Doc. 448 at 4). Instead,
24 Plaintiffs now maintain that these claims:

25        "are about how the defendants named as co-conspirators created and used the
          MERS system to facilitate the securitization and sale of loans procured by
26

27        ───────────────
          [3] The Claims in *Green* and *Dalton* are titled: "Conspiracy to Commit Fraud by
28 Creation, Operation and Use of the MERS System."

                                          - 16 -

Exhibit 3
Page 16 of 27

1    fraud (also known as predatory loans, subprime loans, and toxic loans), and
     how the defendants created and used the MERS system to facilitate wrongful
2    foreclosures on the parties who were the victims of predatory lending, and how
     the MERS system was used to facilitate wrongful foreclosures on others in
3    Nevada"

4    *Id.* Under both Plaintiffs' complaints and the gloss provided by Plaintiffs' Responses,

5    Plaintiffs fail to state a claim. For the sake of thoroughness, the Court will consider each of

6    these constructions–that the MERS system is itself fraudulent or that the MERS system

7    "facilitated" fraudulent activity in turn.

8         *A.    The MERS system is not fraudulent, and MERS has not committed any fraud*

9         While Plaintiffs have conceded this point, it is helpful to provide an overview of the

10   facts. MERS is a wholly owned subsidiary of MERSCORP, a Virginia corporation. Various

11   of the named Defendant banks and lending institutions are shareholders in MERSCORP and

12   participants in the MERS system. Under the MERS system, at the origination of a residential

13   loan, the lender takes possession of a promissory note and the borrower and lender agree to

14   designate MERS as the beneficiary under a deed of trust. Under the MERS system, the rights

15   to the mortgage are tracked internally and not recorded in the public records each time the

16   rights to the mortgage are bought and sold, so long as the buyer is a member of the MERS

17   system.

18        This Court in *Cervantes* considered two possible ways in which this MERS system

19   could be considered fraudulent: (1) MERS is never really a beneficiary under the deed of

20   trust because it never acquires a true beneficial interest; and (2) the MERS system is a means

21   of circumventing the public recording requirements. The Court found that Plaintiffs' claims

22   for conspiracy to commit fraud fail as a matter of law under Rule 12(b)(6) in that it failed to

23   assert several elements of a claim for fraud. The Court relies on the analysis put forward in

24   *Cervantes*. The elements of a fraud claim under California and Nevada law are largely

25   similar to the elements of fraud under Arizona law.[4] Here, under both theories considered

26

27   _____

28        [4] In Arizona, a fraud claim requires proof of nine elements: (1) a representation; (2)
     its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its

- 17 -

Exhibit 3
Page 17 of 27

1    in *Cervantes*, several elements of a fraud claim under Arizona, California, or Nevada

2    law–falsity, reliance, and injury–are lacking from Plaintiffs' complaints. Thus, Plaintiffs

3    have now reframed the issue as a question of whether MERS facilitates origination fraud, a

4    question to which the Court now turns.

5            B.    *MERS "facilitated" fraudulent practices*

6                1. Failure to Plead the Underlying Claim

7           Plaintiffs have, in their responses, advanced a new gloss on their conspiracy to commit

8    fraud claims. They maintain that fraudulent inducement is the "underlying act[] on which

9    the conspiracy claim[] is based." (Doc. 448 at 8 n. 17.) The complaints in *Goodwin*, *Lopez*,

10    and *Vargas* contain such allegations of fraudulent inducement, but nothing in the *Dalton*,

11    *Green* and *Robinson* complaints makes this type of allegation.    Plaintiffs admit this

12    deficiency in their responses. *See id.* at 20 n. 51 (Admitting that while "Plaintiffs in *Dalton*

13    and *Green* and *Robinson* are also able to make similar allegations," the current complaints

14    do not contain these allegations.). Thus, absent allegations of the underlying fraud, the

15    *Dalton*, *Green*, and *Robinson* Complaints do not–and cannot as a matter of law–state a claim

16    for Conspiracy to Commit Fraud Related to the MERS® System. *Rashidi v. Albright*, 818

17    F. Supp. 1354, 1360 (D.Nev. 1993) (holding that because the underlying claim failed the

18    conspiracy claim must also be dismissed); *see also Willis v. City of L.A.*, 57 F. App'x 283,

19    _____

20    truth; (5) the speaker's intent that it be acted upon by the recipient in a manner reasonably
    contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's

21    reliance on the truth of the representation; (8) the right to rely on it; and (9) consequent and
    proximate injury. *Echols v. Beauty Built Homes, Inc.*, 647 P.2d 629, 631 (1982).

22        In Nevada, to state a claim for fraud in the inducement, a plaintiff must allege (1) a

23    false representation of material fact made by the defendant; (2) defendant's knowledge or
    belief that the representation is false; (3) defendant's intention to induce the plaintiff to act

24    or to refrain from acting in reliance upon the misrepresentation; (4) plaintiff's justifiable
    reliance upon the misrepresentation; and (5) damage to the plaintiff resulting from such

25    reliance. *Albert H. Wohlers & Co. v. Bartgis*, 114 Nev. 1249, 1260-61 (1998).

26        In California, to state a claim for fraud, a party must allege (1) a misrepresentation,

27    (2) scienter or knowledge of falsity, (3) an intention to defraud, (4) justifiable reliance, and
    (5) damages to state a claim for fraud. *Dias v. Nationwide Life Ins.*, No. 09-cv-524, 2010

28    WL 1032777, at *8 (E.D. Cal. Mar. 19, 2010).

Exhibit 3
Page 18 of 27

1  287 (9th Cir. 2002) (where no tort alleged, defendants not liable for civil conspiracy as a

2  matter of law).

3        As for the *Goodwin*, *Lopez*, and *Vargas* complaints' allegations of fraudulent

4  inducement, those claims have been remanded to the transferor courts. Yet, because the

5  claim for Conspiracy to Commit Fraud must necessarily fail without an underlying tort, the

6  undersigned must consider the validity of the Fraud in the Inducement Claims. Helpfully, two

7  transferor courts have already addressed these claims and dismissed them under Rule

8  12(b)(6) for failure to state a claim. *See Goodwin v. Executive Trustee Services, LLC*, 680

9  F.Supp.2d 1244, 1256 (D. Nev. 2010) (dismissing fraud in the inducement claim, finding

10  "Plaintiffs' claim for fraud in the inducement fails to allege who made what

11  misrepresentations or when any of the alleged misrepresentations took place. The claim is

12  replete with vague and conclusory allegations such as 'Defendants misrepresented the ability

13  of Plaintiffs, and other similarly situated, to qualify for the loans.'"); *Lopez, et al., v.*

14  *Executive Trustee Services, LLC, et al.*, No. 3:09-CV-0180-ECR (D. Nev. Jan. 13, 2010)

15  Order at 17 (same). The Court finds that just as in *Goodwin* and *Lopez*, the *Vargas* Plaintiffs

16  fail to plead any of the requisite elements of a claim for fraud in the inducement with the

17  specificity required by Fed. R. Civ. P. 9(b).[5]

18        2. Insufficient allegation of conspiracy

19        Regardless of the merits of Plaintiffs' underlying claims for fraud, Plaintiffs' claim

20  that Defendants conspired to commit fraud related to MERS is insufficient both for a failure

---

22  [5] Defendant GE Money Bank also raised the possibility that Plaintiffs' state law
claims for conspiracy to commit fraud against GE Money Bank are preempted by the Federal

23  Home Owners' Loan Act of 1933 (HOLA) and Office of Thrift Supervision regulations
promulgated thereunder. *See* 12 U.S.C. §§ 1461, *et seq.*; 12 C.F.R. § 560.2. However, GE

24  Money Bank provides no evidence (i.e., through a request for judicial notice) beyond mere

25  assertion that it is a thrift or savings association that would be governed by HOLA and
protected by the OTS regulations on preemption. Furthermore, the Court is not convinced

26  that HOLA preempts this type of fraud claim. *See Reyes v. Downey Savings & Loan Ass'n,*

27  *F.A.*, 541 F. Supp. 2d 1108, 1114 (C.D. Cal. 2008) (finding state law claims that defendants
had misrepresented the contract terms were based on the "principles of breach of contract and

28  fraud in the inducement [that] are not specific to lending activities" and thus not preempted).

Exhibit 3
Page 19 of 27

1  to plead conspiracy with the requisite particularity and for a failure to plead an agreement to

2  participate in the fraud. "In alleging fraud or mistake, a party must state with particularity

3  the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Plaintiffs' allegations

4  with respect to fraud were not made with particularity. Rather, Plaintiffs' allegations amount

5  to mere conclusory statements and general averments of fraud. As set forth above section

6  III.B above, Plaintiffs' complaints fall short of the requirements of Rule 9(b), *Twombly*, and

7  *Iqbal*.

8      Thus, due both a lack of an underlying fraud and insufficient allegations of

9  conspiracy, the facilitation gloss advanced by Plaintiffs in their responses fails to save their

10  claims for conspiracy to commit fraud. The Court will dismiss these claims for failure to

11  state a claim.

**SLANDER OF TITLE**

13      Plaintiffs assert claims for slander of title in *Goodwin* and *Lopez*. A claim for slander

14  of title requires "false and malicious communications, disparaging to one's title in land, and

15  causing special damages." *Executive Mgmt., Ltd. v. Ticor Title Co.*, 963 P.2d 465, 478 (Nev.

16  1998).

17      Plaintiffs bring claims for slander of title in *Goodwin* on the allegation that certain

18  defendants "caused to be recorded a Trustee's Deed Upon Sale related to the . . . residence

19  showing that the property" had been conveyed at a trustee's sale (Doc. 45-1, ¶¶ 170-190) and

20  claims for slander of title in *Lopez* on the allegation that certain defendants wrongfully

21  recorded notices of default and intent to foreclose against Plaintiffs' property (Doc. 59-1, ¶¶

22  154-170). Here, Plaintiffs have not sufficiently alleged the falsity of these communications.

23  Just as in *Ramos v. Mortgage Electronic Registrations* [sic] *Systems, Inc.*, No.

24  2:08-cv-1089-ECR-RJJ, 2009 WL 5651132, at *4 (D. Nev. Mar. 5, 2009), "Plaintiffs do not

25  dispute that they were in default on their loan. Nor is it false that the property was to be sold

26  at a trustee's sale. . . . It is not clear, therefore, what Plaintiffs might assert to be false or

27  malicious about the recorded notice." In *Goodwin*, there is no allegation that the trustee's

28  sale had not taken place and the property had been conveyed, and in *Lopez*, there is no

- 20 -

Exhibit 3
Page 20 of 27

1  allegation that Plaintiffs were not in default or that a trustee's sale was actually not

2  scheduled.  The only alleged falsity emerges from Plaintiffs' argument that the MERS

3  recordation process splits the note from the deed of trust, renders the note unenforceable, and

4  thus all subsequent action–including these recordations–are invalid and false.  As dealt with

5  elsewhere in this Order, this argument is not supported by the law.  Therefore, the Court will

6  dismiss Plaintiffs' claims for slander of title for failure to state a claim.

### UNJUST ENRICHMENT

8  Plaintiffs set forth claims for unjust enrichment in *Goodwin*, *Lopez*, *Dalton*, *Green* and

9  *Vargas*.  To set forth a claim for unjust enrichment under Nevada law, a plaintiff must allege

10  that a defendant unjustly retained money or property of another against fundamental

11  principles of equity. *See Asphalt Prods. Corp. v. All Star Ready Mix*, 898 P.2d 699, 700

12  (Nev. 1995).  California law is similar. *See, e.g., Shum v. Intel Corp.*, 630 F. Supp.2d 1063,

13  1073 (N.D. Cal. 2009) (stating elements for unjust enrichment are receipt of a benefit and

14  unjust retention of same at the expense of another).  Unjust enrichment must be premised on

15  some independent basis which establishes a duty on the part of the defendant and the failure

16  of the defendant to abide by that duty.  In and of itself, the phrase "unjust enrichment" does

17  not describe a theory of recovery.  Rather, it is a way of describing the failure to make

18  restitution where equity requires. *See Melchior v. New Line Prods., Inc.*, 106 Cal.App. 4th

19  779, 792, (Cal. Ct. App. 2003);

20  Here, the Court finds that Plaintiffs have failed to state any other claims for relief.

21  Thus, as a matter of law, Defendants cannot have been unjustly enriched and equity does not

22  demand any restitution.  Therefore, the Court will also dismiss the claims for unjust

23  enrichment for failure to state a claim.

### DECLARATORY AND INJUNCTIVE RELIEF

25  Plaintiffs also seek injunctive and declaratory relief.  However, for the various reasons

26  discussed above, the Court has already found that all of Plaintiffs' other claims before this

27  Court must be dismissed.  Therefore, any request for injunctive and declaratory relief

28  premised upon those counts must likewise fail.

- 21 -

Exhibit 3
Page 21 of 27

1                               **ARTICLE III STANDING**

2        Several defendants argue that Plaintiffs lack standing under Article III of the United

3 States Constitution and, thus, Plaintiffs' claims should be dismissed under Rule 12(b)(1) for

4 lack of subject matter jurisdiction. The Court has addressed the deficiencies of Plaintiffs'

5 complaints under Rule 12(b)(6), completely dismisses Plaintiffs' complaints for their failure

6 to state a claim, and will not retrace its steps in a Rule 12(b)(1) analysis.

7                               **LEAVE TO AMEND**

8        Plaintiffs do not explicitly seek leave of this Court to file amended complaints.

9 However, Plaintiffs have undertaken to remind the Court that it "should grant leave to amend

10 even if no request to amend the pleading was made, unless it determines that the pleading

11 could not possibly be cured by the allegation of other facts." (Doc. 488 at 37 (quoting *Doe*

12 *v. United States*, 58 F.3d 494, 496-97 (9th Cir. 1995) (internal quotations omitted).)) Leave

13 to amend a complaint is within the Court's sound discretion, and in exercising this discretion,

14 the Court must be guided by the command of Rule 15(a), which provides that "leave shall

15 be freely given when justice so requires." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373

16 (9th Cir. 1990) (citing Fed.R.Civ.P. 15(a)). "In exercising its discretion[,] . . . 'a court must

17 be guided by the underlying purpose of Rule 15–to facilitate decision on the merits rather

18 than on the pleadings or technicalities.' . . . Thus, 'Rule 15's policy of favoring amendments

19 to pleadings should be applied with extreme liberality.'" *Eldridge v. Block*, 832 F.2d 1132,

20 1135 (9th Cir. 1987) (citations omitted). The Court should consider five factors when

21 assessing whether to allow leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to

22 the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously

23 amended the complaint. *Foman*, 371 U.S. at 182.

24        The Court finds that Plaintiffs' indirect requests to amend their complaints do not

25 constitute bad faith, have not resulted from undue delay, and would not result in undue

26 prejudice to the opposing parties. Because Plaintiffs have not formally moved for leave to

27 amend, they have deprived the Court of the benefit of the redlined proposed amended

28 complaint that would be helpful in making a determination about the futility of amendment.

- 22 -

Exhibit 3
Page 22 of 27

1  The Court also notes that in some of these cases, Plaintiffs have already amended their

2  complaints and are seeking leave to do so for a second or third time.

3      Yet the Court finds no reason to depart from Rule 15's liberal amendment policy and

4  will grant all of Defendants' motions to dismiss without prejudice.

5      To facilitate the streamlining of this MDL, the Court directs plaintiffs, if they choose

6  to seek leave to amend, to jointly file a proposed consolidated amended complaint together

7  with the various plaintiffs whose actions are currently joined to this MDL. The Court will

8  conduct an initial round of pretrial motions for the other member cases as provided for in the

9  various practices and procedures orders until such time as it is appropriate to set forth a

10 timetable for filing this consolidated amended complaint.[6]

11                        **CONCLUSION**

12     Accordingly,

13     **IT IS ORDERED** regarding *Vargas* that: Defendant Citimortgage, Inc.'s Motion to

14 Dismiss Plaintiffs' First Amended Complaint (Doc. 262) is granted[7]; Defendant GE Money

15 Bank's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (Doc. 285) is

16 granted; Defendants National City Bank, National City Mortgage, National City Corporation

17 and PNC Financial Services Group, Inc.'s Motion to Dismiss Count Seven of the First

18 Amended Complaint (Doc. 292) is granted; Defendant MortgageIT, Inc.'s Motion to Dismiss

19 First Amended Complaint (Doc. 299) is granted; Defendant JPMorgan Chase Bank, N.A.'s

20 Motion to Dismiss Plaintiffs' First Amended Complaint [#5 in *Vargas*] (Doc. 309) is granted;

21

22     [6] Should there arise a need for any plaintiff to seek preliminary injunctive relief, that

23 party should file a proposed amended complaint concurrently with the motion for preliminary

24 injunction.   Such a proposed amended complaint need not conform with this Court's
   instruction that a consolidated amended complaint be filed.

25     In a departure from prior practice, any motions relating to less than all member cases,
   should be filed in the individual case numbers assigned to each case.

26

27     [7] Unless otherwise noted, the Court dismisses Plaintiffs' complaints, without
   prejudice, for failure to state a claim. As to all other theories, Defendants' motions to dismiss

28 are denied without prejudice.

Exhibit 3
Page 23 of 27

1  Certain Defendants' Motion to Dismiss First Amended Class Action Complaint (Doc. 314)

2  is granted; Defendants MERSCORP, Inc. and Mortgage Electronic Registration Systems,

3  Inc.'s Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (Doc. 324) is

4  granted;

5      **IT IS FURTHER ORDERED** regarding *Lopez* that: Defendant Citimortgage, Inc.'s

6  Motion to Dismiss Plaintiffs' Second Amended Complaint [#59-1] (Doc. 260) is granted;

7  Defendant GE Money Bank's Motion to Dismiss Plaintiffs' Second Amended Class Action

8  Complaint (Doc. 281) is granted; Defendants National City Bank, National City Mortgage,

9  National City Corporation and PNC Financial Services Group, Inc.'s Motion to Dismiss

10  Counts Five and Six of the Second Amended Complaint (Doc. 291) is granted; Defendant

11  T.D. Service Company's Motion to Dismiss Second Amended Complaint Against T.D.

12  Service Company (Doc. 297) is granted; Defendant JPMorgan Chase Bank, N.A.'s Motion

13  to Dismiss Plaintiffs' Second Amended Complaint [#419 in *Lopez*] (Doc. 308) is granted;

14  Certain Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 316)

15  is granted; Defendant National Default Servicing Corp.'s Motion to Dismiss for Failure to

16  State a Claim for Relief (Doc. 318) is granted; Defendants MERSCORP, Inc. and Mortgage

17  Electronic Registration Systems, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Class

18  Action Complaint (Doc. 331) is granted;

19      **IT IS FURTHER ORDERED** regarding *Goodwin* that: Defendant Citimortgage,

20  Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint [#45-1] (Doc. 259) is

21  granted; Defendant Deutsche Bank National Trust Company's Motion to Dismiss Plaintiffs'

22  Second Amended Class Action Complaint (Doc. 266) is granted; Defendant Ocwen Loan

23  Servicing, LLC's Motion to Dismiss Second Amended Complaint (Doc. 268) is granted;

24  Defendant Western Progressive Trustee LLC's  Motion to Dismiss Second Amended

25  Complaint (Doc. 269) is granted; Defendant American Home Mortgage Servicing, Inc.'s

26  Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint (Doc. 278) is

27  granted; Defendant GE Money Bank's Motion to Dismiss Plaintiffs' Second Amended Class

28  Action Complaint (Doc. 282) is granted; Defendant Litton Loan Servicing LP's Motion to

- 24 -

Exhibit 3
Page 24 of 27

1  Dismiss Second Amended Class Action Complaint (Doc. 286) is granted; Defendants

2  National City Bank, National City Mortgage, National City Corporation and PNC Financial

3  Services Group, Inc.'s Motion to Dismiss Counts Six and Seven of the Second Amended

4  Complaint (Doc. 290) is granted; Defendant WMC Mortgage Corp.'s Motion to Dismiss

5  Plaintiffs' Second Amended Class Action Complaint (Doc. 296) is granted; Defendant T.D.

6  Service Company's Motion to Dismiss Second Amended Complaint (Doc. 298) is granted;

7  Defendant I.B. Proprty Holdings, L.L.C.'s Motion to Dismiss Second Amended Complaint

8  (Doc. 300) is granted; Defendants Aztec Foreclosure Corporation and National Default

9  Servicing Corp.'s Motion to Dismiss for Failure to State a Claim for Relief (Doc. 304) is

10  granted; Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss Plaintiffs' Second

11  Amended Complaint [#443 in *Goodwin*] (Doc. 305) is granted; Defendant Bank of New

12  York's Motion to Dismiss (Doc. 310) is granted; Certain Defendants' Motion to Dismiss

13  (Doc. 320) is granted; Defendants MERSCORP, Inc. and Mortgage Electronic Registration

14  Systems, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 327) is

15  granted; Defendant MTC Financial, Inc. dba Trustee Corp's Motion to Dismiss Plaintiffs'

16  Second Amended Class Action Complaint for Failure to State a Claim for Relief (Doc. 479)

17  is granted.

18      **IT IS FURTHER ORDERED** regarding *Green* that: Defendants Citimortgage, Inc.

19  and CR Title Services, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint [#35]

20  (Doc. 257) is granted; Defendant American Home Mortgage Servicing, Inc.'s Motion to

21  Dismiss Plaintiffs' First Amended Class Action Complaint (Doc. 279) is granted; Defendant

22  GE Money Bank's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint

23  (Doc. 283) is granted; Defendant Litton Loan Servicing LP's Motion to Dismiss First

24  Amended Class Action Complaint (Doc. 287) is granted and Defendant Litton Loan

25  Servicing LP is dismissed with prejudice[8]; Defendants National City Bank, National City

26

27      [8] Plaintiffs, in their response, aver that listing Litton in the caption of the *Green* matter

28  was inadvertent. Doc. 451 at 3 n.3.

Exhibit 3
Page 25 of 27

1  Mortgage, National City Corporation and PNC Financial Services Group, Inc.'s Motion to

2  Dismiss Counts Two, Three and Four of the First Amended Complaint (Doc. 294) is granted;

3  Defendant Bank of New York Mellon's Motion to Dismiss Plaintiffs' First Amended

4  Complaint [#35] (Doc. 302) is granted; Defendant JPMorgan Chase Bank, N.A.'s Motion to

5  Dismiss Plaintiffs' First Amended Complaint [#35] (Doc. 307) is granted; Defendant

6  National Default Servicing Corp.'s Motion to Dismiss for Failure to State a Claim for Relief

7  (Doc. 312) is granted; Defendant NdeX West, LLC's Motion to Dismiss Plaintiffs' First

8  Amended Class Action Complaint (Doc. 317) is granted; Certain Defendants' Motion to

9  Dismiss (Doc. 321) is granted; Defendants MERSCORP, Inc. and Mortgage Electronic

10 Registration Systems, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Doc.

11 333) is granted.

12         **IT IS FURTHER ORDERED** regarding *Dalton* that: Defendant Citimortgage, Inc.

13 and CR Title Services, Inc.'s Motion to Dismiss Plaintiffs' Complaint (Doc. 258) is granted;

14 Defendant Deutsche Bank National Trust Company's Motion to Dismiss Plaintiffs' Class

15 Action Complaint (Doc. 267) is granted; Defendant American Home Mortgage Servicing,

16 Inc.'s Motion to Dismiss Plaintiffs' Class Action Complaint (Doc. 277) is granted; Defendant

17 GE Money Bank's Motion to Dismiss Plaintiffs' Class Action Complaint (Doc. #284) is

18 granted; Defendant T.D. Service Company's Renewed Motion to Dismiss Class Action

19 Complaint (Doc. 293) is granted and T.D. Service Company's Renewed Motion to Quash

20 Service of Summons and Complaint is denied as moot; Defendants National City Bank,

21 National City Mortgage, National City Corporation and PNC Financial Services Group,

22 Inc.'s Motion to Dismiss Counts Two, Three and Four of the Complaint (Doc. 295) is

23 granted; Defendants Aztec Foreclosure Corporation and National Default Servicing Corp.'s

24 Motion to Dismiss for Failure to State a Claim for Relief (Doc. 301) is granted; JPMorgan

25 Chase Bank, N.A., EMC Mortgage Corporation, and California Reconveyance Company's

26 Motion to Dismiss Plaintiffs' Complaint (Doc. 306) is granted; Defendant MetLife Bank,

27 N.A.'s Motion to Dismiss (Doc. 319) is granted; Defendants MERSCORP, Inc. and

28 Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss Plaintiffs' Class Action

Exhibit 3
Page 26 of 27

1   Complaint (Doc. 325) is granted; Certain Defendants' Motion to Dismiss (Doc. 328) is

2   granted; Defendant Cal-Western Reconveyance Corporation's Motion to Dismiss Class

3   Action Complaint (Doc. 423) is granted.

4   **IT IS FURTHER ORDERED** regarding *Robinson* that: Defendant Citimortgage,

5   Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 261) is granted;

6   Defendant GE Money Bank's Motion to Dismiss Plaintiffs' First Amended Class Action

7   Complaint (Doc. 280) is granted; Defendants National City Bank, National City Mortgage,

8   National City Corporation and PNC Financial Services Group, Inc.'s Motion to Dismiss

9   Count Eight of the First Amended Complaint (Doc. 288) is granted; Defendant JPMorgan

10  Chase Bank, N.A.'s Motion to Dismiss Plaintiffs' First Amended Complaint [#91 in

11  *Robinson*] (Doc. 303) is granted; Certain Defendants' Motion to Dismiss Plaintiffs' First

12  Amended Complaint (Doc. 311) is granted; Defendants MERSCORP, Inc. and Mortgage

13  Electronic Registration Systems, Inc.'s Motion to Dismiss Plaintiffs' First Amended

14  Complaint (Doc. 326) is granted.

15  **IT IS FURTHER ORDERED** that Defendants GMAC Mortgage, LLC, Executive

16  Trustee Services, Inc., and Homecomings Financial, LLC's Motion to Dismiss All Plaintiffs'

17  Claims Retained by the Court in these Six Class Actions (Doc. 276) is granted; Defendants

18  Aurora, Old Republic, and Saxon's Motion to Dismiss Plaintiffs' Complaints (Doc. 289)

19  (concerning *Goodwin*, *Green*, and *Dalton*) is granted; Motion to Dismiss By Shareholder

20  Defendants (Doc. 315) (concerning all six cases) is granted; Motion to Dismiss Plaintiffs'

21  Complaints Filed by Quality Loan Service Corporation (Doc. 343) (concerning *Goodwin*,

22  *Green*, and *Dalton*) is granted.

23  **IT IS FURTHER ORDERED** that Motion of the Federal Housing Finance Agency

24  as Conservator of Fannie Mae and Freddie Mac to Dismiss (Doc. 264) is denied as moot.

25  DATED this 30th day of September, 2010.

26

27  _____
    James A. Teilborg

28  United States District Judge

- 27 -

Exhibit 3
Page 27 of 27

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| SAMSON MCGINNIS,<br><br>            Plaintiff,<br><br>      v.<br><br>GMAC MORTGAGE CORPORATION, as successor in interest to Homecomings Financial, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,<br><br>            Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:10-cv-00301-TC<br><br>Judge Tena Campbell |

Samson McGinnis brings six causes of action based on an $817,500 mortgage he obtained on his residential property, alleging that Mortgage Electronic Registration Systems (MERS) does not have authority to foreclose on a Deed of Trust for his property and that he was not provided with proper disclosures under the Truth in Lending Act (TILA) at the time he closed on the loan. He also seeks to amend his complaint to add several more claims based on the same conduct alleged in the original complaint. Defendants GMAC Mortgage Corporation (GMAC) and MERS move to dismiss Mr. McGinnis' complaint, arguing that Mr. McGinnis has not stated a claim. They also argue that the court should not authorize Mr. McGinnis to file his amended complaint because it would be futile.

The court GRANTS Defendants' motion to dismiss and DENIES Plaintiff's motion to amend his complaint because such amendment would be futile.

BACKGROUND

Mr. McGinnis obtained a loan from Homecomings Financial for $817,500 secured by a

Exhibit 4
Page 1 of 12

property in Midway, Utah, on June 21, 2007, which he purchased that same day.[1]  The Deed of

Trust securing the note reads in relevant part:

> Borrower understands and agrees that MERS holds only legal title to the interest granted
> by Borrower in this Security Instrument, but, if necessary to comply with law or custom,
> MERS (as nominee for Lender and Lender's successors and assigns) has the right: to
> exercise any or all of those interests, including, but not limited to, the right to foreclose
> and sell the Property; and to take any action required of the Lender including, but not
> limited to, releasing and canceling this Security Instrument.

Deed of Trust (attached as Ex. A to Def.'s Req. for Judicial Notice).  Just over a year

later, on July 18, 2009, James Woodall, the trustee appointed by MERS to conduct the

foreclosure, recorded a Notice of Default against the Midway property.  Mr. McGinnis does not

claim that the foreclosure was improper because of an error on the part of the mortgage company

concerning whether he made his payments.  Rather, Mr. McGinnis maintains that Defendant

MERS did not have authority to appoint a trustee because MERS was not the beneficiary to the

Deed of Trust.  Mr. McGinnis also contends that shortly after the Notice of Default was filed, he

discovered that Defendants had failed to make proper disclosures under TILA, though he does

not specify how the disclosures were not proper.  On August 5, 2009, Mr. McGinnis provided

MERS, Homecoming Financial, GMAC, and Mr. Woodall with a Notice of Rescission based on

the alleged disclosure violations.

Based on these events, Mr. McGinnis has brought claims for quiet title, injunctive relief,

fraud, and violation of TILA and the Home Mortgage Disclosure Act (HMDA).  He also seeks to

---

[1]Although Mr. McGinnis obtained the loan on the Midway property the same day he
purchased the property, he maintains in his opposition brief that the loan was a refinance
transaction covered by TILA's rescission provision.  If Mr. McGinnis' loan was obtained to
finance the acquisition of the property, the loan would not be subject to rescission under TILA.
See 15 U.S.C. § 1635(a)(1).  The parties have not addressed this issue.

2

Exhibit 4
Page 2 of 12

amend his complaint to add another fraud claim and claims for negligent misrepresentation, civil

conspiracy, violation of the Utah Consumer Sales Practices Act (UCSPA), and fraudulent

nondisclosure.

ANALYSIS

**Standard of Review**

When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which

relief may be granted, the court must presume the truth of all well-pleaded facts in the complaint,

but need not consider conclusory allegations. Tal v. Hogan, 453 F.3d 1244, 1252 (2006), cert.

denied, 127 S. Ct. 1334 (2007); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).

Conclusory allegations are allegations that "do not allege the factual basis" for the claim. Brown

v. Zavaras, 63 F.3d 967, 972 (10th Cir. 1995). See also Hall v. Bellmon, 935 F.2d 1106, 1110

(10th Cir. 1991) ("conclusory allegations without supporting factual averments are insufficient to

state a claim on which relief can be based") (emphasis added). The court is not bound by a

complaint's legal conclusions, deductions and opinions couched as facts. Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 555 (2007). And although all reasonable inferences must be drawn in

the non-moving party's favor, Tal, 453 F.3d at 1252, a complaint will only survive a motion to

dismiss if it contains "enough facts to state a claim to relief that is plausible on its face."

Twombly, 550 U.S. at 570, quoted in Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174,

1177 (10th Cir. 2007). Stating a claim under Rule 8 "demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or

'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 129 S.

Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555).

3

Exhibit 4
Page 3 of 12

The court grants Defendants' motion to dismiss Mr. McGinnis' fraud claim because MERS has the authority to foreclose on Mr. McGinnis' note. Further, Mr. McGinnis' TILA damages claim is time-barred, and he has failed to provide the court with the factual basis for his claim that TILA entitles him to rescind his loan. The court also rejects Mr. McGinnis' claim under the Home Mortgage Disclosure Act because the HMDA does not provide for a private cause of action. Finally, the court denies Mr. McGinnis' motion to amend the complaint because such amendment would be futile.

**MERS' Authority to Foreclose**

Mr. McGinnis bases his fraud claim and part of his claims for quiet title and injunctive relief on his contention that MERS lacked the authority to foreclose. Mr. McGinnis contends that MERS could not appoint Mr. Woodall as trustee because MERS is merely a nominee of the lender and does not possess the note. This argument is not persuasive.

MERS is an electronic registry that tracks the servicing rights and ownership of mortgage loans. Language in many deeds of trust, including the one signed by Mr. McGinnis in this case, gives MERS the right to act in the lender's behalf. The Deed of Trust signed by Mr. McGinnis states, "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument." Mr. McGinnis contends that notwithstanding this language in the Deed of Trust, MERS does not have standing to appoint a trustee because it does not have ownership of the promissory note associated with the Deed of Trust. But courts have consistently held that this language in a Deed of Trust gives MERS the authority to foreclose in behalf of the lender and that MERS need not possess the note in order to appoint a trustee in behalf of the lender who does hold the note. See,

4

Exhibit 4
Page 4 of 12

e.g., Rodeback v. Utah Fin., 1:09-cv-134, 2010 U.S. Dist. LEXIS 69821 * 9-10 (D. Utah July 13, 2010); Burnett v. Mortgage Elec. Registration Sys., Inc., 1:09-cv-69, 2009 U.S. Dist. LEXIS 100409 * 10-11 (D. Utah October 27, 2009); Mortgage Elec. Registration Sys., Inc. v. Azize, 965 So. 2d 151, 153-54 (Fl. Dist. 2d Ct. App. 2007);  Mortgage Elec. Reg. Sys., Inc. v. Ventura, No. CV054003168S, 2006 Conn. Super. LEXIS 1154 * 3-4 (Conn. Super. Ct. April 20, 2006). Moreover, Utah law on nonjudicial foreclosure contains no requirement that the beneficiary produce the actual note in order to authorize the trustee to foreclose on the property secured by the note. See Utah Code Ann. § 57-1-21 to -38.

Mr. McGinnis cites Landmark National Bank v. Kesler, 216 P.3d 158 (Kan. 2009), to support his argument that MERS lacks authority to appoint a trustee.  But Landmark National Bank does not concern MERS' standing to foreclose, but rather whether MERS was an indispensable party who should have been allowed to intervene in a foreclosure action initiated by another lender. Id. at 161.  Further, the Landmark National Bank case fails to recognize the agency relationship between MERS and the lender that is created by the language in the Deed of Trust designating it as beneficiary. See Blau v. Am.'s Serv. Co., No. cv-08-773, 2009 U.S. Dist LEXIS 90632, * 21-22 ( D. Ariz. Sept. 29, 2009) (distinguishing Landmark Nat. Bank and holding that MERS had authority to transfer ownership of the Deed of Trust).

The court dismisses Mr. McGinnis' fraud claim and the portions of his claims for quiet title and injunctive relief that rely on the argument that MERS lacks authority to foreclose on the security interest.

**Truth in Lending Act**

Mr. McGinnis argues that he rescinded his loan under the rescission provision of the

5

Exhibit 4
Page 5 of 12

Truth in Lending Act (TILA) on August 5, 2009, because Homecomings Financial did not

provide him with the proper disclosures under TILA.  Mr. McGinnis claims that Defendants

> violated . . . TILA by failing to make proper disclosures of finance charges, interest
> rates, fees, costs, penalties and other information required to be disclosed under
> TILA, . . . failed to provide the proper disclosures at the time the loan was offered
> and signed by Plaintiff, . . . failed to disclose the true interest rate, the true penalties,
> the full extent of finance charges, fees, costs and penalties under the loan, . . . [and]
> failed to properly disclose the right of rescission.

(Compl. ¶¶ 39-42.)  Defendants counter that any claims for damages are time-barred by TILA's

one-year statute of limitations and further that Mr. McGinnis did not properly rescind his loan

because he could not tender the loan amount.  Mr. McGinnis contends that the statute of

limitations on his damages claim does not bar his claims because either he is entitled to rescind

his loan or because the court should equitably toll the statute of limitations.  He also takes the

position that tender is not required to rescind a loan under TILA.

### Statute of Limitations on TILA Claims

Any claim for violation of TILA must be brought "within one year from the date of the

occurrence of the violation."  15 U.S.C. § 1640(e).  In the Tenth Circuit, the statute of limitations

for TILA claims runs from the time the consumer credit transaction was consummated.  Stevens

v. Rock Springs Nat. Bank, 497 F.2d 307, 309 (10th Cir. 1974) (holding that the failure to meet

TILA disclosure requirements is not a continuing breach).  Unless some legal basis exits for

tolling the statute of limitations in this case, the time for Mr. McGinnis to file claims under TILA

ran on June 21, 2008.

Mr. McGinnis argues that the statute of limitations should not run because the lender has

been involved in fraudulent, misleading, and deceptive practices that concealed the TILA

6

Exhibit 4
Page 6 of 12

violations and, for that reason, the statute of limitations should be tolled. But the complaint

alleges only that disclosures were not made, not that Defendants actively concealed the discovery

of the information that should have been contained in the disclosures.

Mr. McGinnis also argues that the statute of limitations on his TILA claims should be

extended because he has three years to rescind his loan under § 1635. However, the rescission

provision of TILA does not extend the one-year statute of limitations on claims for damages for

TILA violations. See 15 U.S.C. § 1635; Brown v. Nationscredit Fin. Servs. Corp., 349 F. Supp.

2d 1134, 1137 (N.D. Ill. 2005). Even if Mr. McGinnis is entitled to rescission under TILA, the

statute of limitations governing his claims for violation of TILA have run.

### Rescission under TILA

Congress enacted TILA in order "to assure a meaningful disclosure of credit terms so that

the consumer [could] compare more readily the various credit terms available to him and avoid

the uninformed uses of credit, and to protect the consumer against inaccurate and unfair credit

billing and credit card practices." 15 U.S.C. § 1601(a). Section 1635 allows consumers to

rescind "any consumer credit transaction . . . in which a security interest . . .is or will be retained

or acquired in any property which is used as the principal dwelling of the person to whom credit

is extended," so long as such rescission takes place within three days of the consummation of the

transaction or the delivery of required material disclosures under TILA, whichever occurs later.

15 U.S.C. § 1635. If the lender never submits the required disclosures, the borrower's right to

rescission expires three years after the consummation of the transaction. 15 U.S.C. § 1635(f).

In order for the borrower to have the right to rescind under TILA, the lender must fail to

make a material disclosure; mere technical violations warrant damages only. Taylor v. Domestic

7

*Exhibit 4*
*Page 7 of 12*

Remodeling, Inc., 97 F.3d 96, 99 (5th Cir. 1996) (holding that the failure to disclose the right to rescind was material). A borrower who has not received the required disclosures may rescind the loan transaction by providing notification to the creditor. Id. § 1635(a). The creditor then has twenty days to return the security interest and fees to the borrower. Id. § 1635(b). After the creditor has returned the security interest to the borrower, the borrower must then make tender of the funds given under the agreement. Id. "The goal of rescission is to restore the status quo that existed prior to the parties' agreement." Anderson v. Doms, 2003 UT App 241, ¶ 11, 75 P.3d 925 (citations omitted); see also Williams v. Homestake Mortgage Co., 968 F.2d 1137, 1140 (11th Cir. 1992).

      TILA details the procedure for a borrower to rescind the loan, but allows the court to modify this procedure to maintain rescission's status as an equitable remedy. "Congress, through its legislative history, has made it quite clear that the courts, at any time during the rescission process, may impose equitable conditions to insure that the consumer meets his obligations after the creditor has performed his obligations as required by the act." Williams, 968 F.2d at 1142. "Because of the equitable nature of rescission, there is not one precise formula that applies to all rescission cases." Anderson, 2003 UT App, ¶ 11. Though several other circuits have required borrowers claiming rescission under TILA demonstrate their ability to return the borrowed funds to the lender, the Tenth Circuit has not yet considered the question. Smith v. Argent Mortg. Co., LLC, 331 Fed. Appx. 549, 557 n.5 (10th Cir. 2009); see, e.g., Yamamoto v. Bank of N.Y., 329 F.3d 1167, 1171-73 (9th Cir. 2003); Williams, 968 F.2d at 1140. Moreover, courts have generally waited until the summary judgment stage to determine whether a borrower has the ability to fulfill the tender requirement. See Am. Mortgage Network, Inc. v. Shelton, 486 F.3d

8

Exhibit 4
Page 8 of 12

815, 821 (4th Cir. 2007) (affirming summary judgment where borrower did not have the ability

to tender); Yamamoto, 329 F.3d 1167; Moore v. Wells Fargo Bank, 597 F. Supp. 2d 612, 616-17

(E.D. Va. 2009) (denying motion to dismiss even though plaintiff had not established her ability

to tender); but see Sipe v. Countrywide Bank, 690 F. Supp. 2d 1141, 1150 (E.D. Cal. 2010)

(requiring plaintiff to allege ability to tender in the complaint in order to survive a motion to

dismiss).

Defendants argue that Grealish v. American Brokers Conduit, No. 2:08-cv-765, 2009

U.S. Dist. LEXIS 84842, 2009 WL 2992570 (D. Utah Sept. 16, 2009) supports their argument

that Mr. McGinnis must plead ability to tender in order to survive on a motion to dismiss.  But in

Grealish the loan transaction was exempt from TILA, and the court considered only common-

law rescission.  Id. at * 2; see also Stokes v. Mountain Am. Fed. Credit Union, No. 2:10-cv-27,

2010 U.S. Dist. LEXIS 67775 at * 8-9 (July 8, 2010) (holding that borrower had no right to

common-law rescission because he had not alleged the ability to return the loan proceeds).  TILA

modifies the common-law order of rescission by requiring the lender to return the property before

the borrower must return the loaned funds.  While the court may equitably require a borrower to

prove the ability to tender before allowing the borrower to rescind, such a requirement is not part

of § 1635 and not an appropriate consideration on a motion to dismiss.

In this case, Mr. McGinnis claims that he rescinded his loan after discovering that

Defendants violated TILA by "fail[ing] to identify and disclose all facts relating to the loan and

failing to disclose all finance charges to which the borrower will be obligated . . . [,] fail[ing] to

properly disclose how finance charges were computed . . . [,] [and] present[ing] the terms of the

loan in a document which was not clear and concise and in a manner the borrower could

9

Exhibit 4
Page 9 of 12

comprehend." Complaint ¶ 17.  Mr. McGinnis also alleges in his time-barred TILA cause of

action that Defendants' disclosures were "improper," though he does not specify how these

disclosures were improper.  Although Mr. McGinnis may have a claim for rescission, the court

cannot determine based on his pleading how Defendants failed to provide him the material

disclosures required by TILA.  Mr. McGinnis has not provided the court or Defendants with a

"statement of the claim showing that the pleader is entitled to relief" as required by Rule 8 of the

Federal Rules of Civil Procedure because he has failed to state the factual basis for his claim.

Accordingly, the court grants Defendants' motion to dismiss Mr. McGinnis' TILA

claims.  Mr. McGinnis may file a motion to amend his complaint, including a proposed amended

complaint on his rescission claim only so long as his amended complaint is filed by September

17, 2010, and complies with Rule 11 of the Federal Rules of Civil Procedure.  Defendants may,

of course, oppose the motion.

**Home Mortgage Disclosure Act**

Mr. McGinnis alleges that Defendants have failed to maintain proper records of the loan

documentation as required by the Home Mortgage Disclosure Act, 12 U.S.C. § 2803(a)

(HMDA).  Defendants argue that the HMDA does not provide for private enforcement.  Federal

regulations state that HMDA is to be enforced by administrative agencies.  12 C.F.R. § 203.6; 12

U.S.C. § 2804.  HMDA does not create a private cause of action.  See Stokes v. Mt. Am. Fed.

Credit Union, 2:10-cv-27, 2010 U.S. Dist. LEXIS 67775, * 9 (July 8, 2010); Routen v. Citi, 2009

U.S. Dist. LEXIS 96575,* 19 (N.D. Ill. Oct. 16, 2009).  Accordingly, the court dismisses Mr.

McGinnis's HMDA claim.

Exhibit 4
Page 10 of 12

**First Amended Complaint**

     Mr. McGinnis seeks to amend his complaint to add several causes of action. First, Mr. McGinnis seeks to bring a claim that Defendants violated the Utah Consumer Sales Practices Act (UCSPA). Specifically, he claims that Defendants failed to obtain financial documentation verifying Mr. McGinnis's ability to repay the loan, loaned him money they knew he could not afford to repay, and failed to disclose all facts and finance charges relating to the loan and how those charges were computed. Mr. McGinnis also argues that Defendants violated the UCSPA because they never possessed the original loan documents. Defendants argue that such an amendment would be futile because the UCSPA does not apply to this mortgage transaction. "The UCSPA, Utah Code Ann. §§ 13-11-1 to -23, prohibits deceptive or unconscionable acts and practices by a supplier in connection with a consumer transaction." Wade v. Jobe, 818 P.2d 1006, 1013-14 (Utah 1991). But if a more specific law regulates the consumer transaction at issue, the UCSPA does not apply to that transaction. Carlie v. Morgan, 922 P.2d 1, 6 (Utah 1996). For instance, the Utah Supreme Court has declined to extend the UCSPA to residential lease transactions for conduct covered under the Utah Fit Premises Act. Id. In this case, Defendants argue that their conduct is governed by the more specific Utah High Cost Home Loan Act, Utah Code section 61-2d-101 to -113, and Mortgage Lending and Servicing Act, Utah Code section 70D-2-101. The court agrees.

     Mr. McGinnis also seeks to add a negligent misrepresentation claim, but he does not state any specific misrepresentation upon which he relied. Mr. McGinnis next seeks to add a civil conspiracy claims based on MERS' lack of authority to foreclose, but the court has already rejected this argument. Finally, both the fraud claim based on TILA violations and the fraudulent

11

Exhibit 4
Page 11 of 12

nondisclosure concealment claims fail to plead the fraudulent behavior with particularity. Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Plastic Packaging Corp. v. Sun Chem. Corp., 136 F. Supp. 2d 1201, 1203 (D. Kan. 2001). To allege fraud, "the plaintiff must set out the 'who, what, where, and when' of the alleged fraud." Id. Mr. McGinnis' claim does not give the specifics of the alleged fraud sufficient to put Defendants on notice. The court therefore denies Mr. McGiniss' motion to amend the complaint because it would be futile.

CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion to dismiss the complaint and DENIES Plaintiff's motion to file a first amended complaint. Consistent with the court's discussion of the TILA claims, Mr. McGinnis may file a motion to amend complaint with the court on the limited issue of rescission under TILA by September 17, 2010.

DATED this 27th day of August, 2010.

BY THE COURT:

*Tena Campbell*

_____

TENA CAMPBELL
Chief Judge

12

Exhibit 4
Page 12 of 12

IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| JASON J. KING,<br><br>    Plaintiff,<br><br><br><br><br>    vs.<br><br><br>AMERICAN MORTGAGE NETWORK, et al.,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS BY DEFENDANT CHASE HOME FINANCE AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br><br>Case No. 1:09-CV-125 TS |

This matter is before the Court on a Motion to Dismiss by Defendant Chase Home

Finance, which is joined by Defendant Federal National Mortgage Association ("Fannie Mae"),

and Plaintiff's Motion for Summary Judgment. For the reasons discussed below, the Court will

grant Defendant Chase's Motion and deny Plaintiff's Motion.

## I.  STANDARD OF REVIEW

As stated, Defendant Chase has filed a Motion to Dismiss. In that Motion, Defendant

refers to and attaches a number of documents outside the pleadings. In response, Plaintiff has

1

Exhibit 5
Page 1 of 8

filed a Motion for Summary Judgment, also referring to matters outside the pleadings. The Court will treat the Motions as cross motions for summary judgment.

"Notice to the parties is required to prevent unfair surprise when a judge converts a 12(b)(6) motion into a Rule 56 motion."[1] But "when a party submits material beyond the pleadings in support of or opposing a motion to dismiss, the prior action on the part of the part[y] puts [him] on notice that the judge may treat the motion as a Rule 56 motion."[2] "The required notice may be actual or constructive, and in some circumstances, the Tenth Circuit has concluded that the submission of evidentiary materials by the movant, the nonmovant, or both of them constitutes sufficient notice.[3] "A represented party who submits matters outside the pleadings to the judge and invites consideration of them has notice that the judge may use them to decide a motion originally noted as a motion to dismiss, requiring its transformation to a motion for summary judgment."[4] Because both parties have submitted material beyond the pleadings in their motions here, and because the issues have been sufficiently briefed by both parties, it should not be unfair or inequitable to treat the 12(b)(6) motion as one for summary judgment.

---

[1] *Arnold v. Air Midwest, Inc.*, 100 F.3d 857, 859 n.2 (10th Cir. 1996) (citing *Nichols v. United States*, 796 F.2d 361, 364 (10th Cir.1986)).

[2] *Id.* (citing *Wheeler v. Main Hurdman*, 825 F.2d 257, 260 (10th Cir.), *cert. denied*, 484 U.S. 986 (1987)).

[3] *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996).

[4] *Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1533 (9th Cir. 1985).

2

Exhibit 5
Page 2 of 8

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[5]  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[6]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[7]

## II.  BACKGROUND

In November 2007, Plaintiff received a loan for $112,000 from American Mortgage Network, Inc. ("AmNet") to purchase a property in Ogden, Utah.  The loan is evidenced by a promissory note (the "Note") signed by Plaintiff on November 8, 2009.[8]  Plaintiff's loan with AmNet was secured by a Deed of Trust dated November 8, 2007.[9]  Mortgage Electronic Registration Systems, Inc. ("MERS") was designated as the beneficiary of the Deed of Trust as nominee for AmNet and its assigns as the legal title owner of the property.  The Deed of Trust states, in pertinent party:

> Borrower understands and agrees that . . . MERS (as nominee for Lender and
> Lender's successors and assigns) has the right: to exercise any or all of [Lender's]

---

[5]*See* Fed. R. Civ. P. 56(c).

[6]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[7]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

[8]Docket No. 19, Ex. A.

[9]*Id.*, Ex. B.

3

Exhibit 5
Page 3 of 8

interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.[10]

Under the terms of the loan, AmNet was authorized to sell or transfer the Note and Deed of Trust to a third party.[11]

In February 2008, AmNet sold the loan to Fannie Mae. Defendant Chase is the servicer of the loan for Fannie Mae. On July 7, 2009, MERS assigned its beneficial interest under the Trust Deed to Chase, as evidenced by an Assignment of Trust Deed.[12] Chase named eTitle Insurance Agency as Substitute Trustee under the Trust Deed.

Plaintiff defaulted under the terms of the loan. Chase caused the property to be foreclosed. Chase sold the property to Fannie Mae at the foreclosure sale.[13]

The day before the foreclosure sale, Plaintiff's former counsel wrote a letter on behalf of Plaintiff to Chase.[14] In that letter, counsel demanded a stop of the foreclosure sale, production of the "promissory note and all other documents in your possession related to the loan," and

---

[10]*Id.*, Ex. B, at 3.

[11]*Id.*, Ex. A at ¶ 1; *id.*, Ex. B at ¶ 20.

[12]*Id.*, Ex. C.

[13]*Id.*, Ex. D.

[14]*Id.*, Ex. E.

4

Exhibit 5
Page 4 of 8

threatening legal action if the sale was not stopped.[15]  Plaintiff has also provided a second letter

written by his former counsel on July 21, 2009.[16]

### III.  DISCUSSION

A.    QUALIFIED WRITTEN REQUEST

Plaintiff first alleges that Defendant Chase violated the Real Estate Settlement and

Procedures Act ("RESPA")[17] by failing to respond to a qualified written request ("QWR"),

namely the letters from Plaintiff's former counsel.  Defendant contends that the letters do not

meet the standards of a QWR.  Defendant further argues that Plaintiff's RESPA claim fails

because Plaintiff has not demonstrated a causal link between any damages and the alleged

RESPA violation.

> [A] qualified written request shall be a written correspondence, other than notice
> on a payment coupon or other payment medium supplied by the servicer, that–
> (i) includes, or otherwise enables the servicer to identify, the name and account of
> the borrower; and
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent
> applicable, that the account is in error or provides sufficient detail to the servicer
> regarding other information sought by the borrower.[18]

A QWR relates only to the "servicing" of the loan, which is defined as requests relating to

the "receiving any scheduled periodic payments from a borrower pursuant to the terms of any

loan . . . and making the payments of principal and interest and such other payments with respect

------------------------------

[15]*Id.*

[16]Docket No. 21, Ex. A.

[17]12 U.S.C. § 2605(e).

[18]*Id.* § 2605(e)(1)(B).

5

Exhibit 5
Page 5 of 8

to the amounts received from the borrower as may be required pursuant to the terms of the loan."[19] If the lender fails to comply with a QWR, the borrower is entitled to "any actual damages to the borrower as a result of the failure; and . . . any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000."[20]

The Court need not determine whether the letters from Plaintiff's former counsel meet the requirements of a QWR because he has not alleged damages. RESPA requires borrowers to show actual damages as a result of a failure to comply with its provisions and allows the court to provide the borrower with additional damages in the case of a pattern or practice of noncompliance.[21] Plaintiff has not alleged any actual damage resulting from the failure to respond or delay in responding to the QWR. Therefore, this claim fails.

B.    SPLIT NOTE AND TRUST DEED

Plaintiff seeks to have title quieted in him based on the allegation that the Note and Trust Deed have been split. Plaintiff has not met his burden on summary judgment to show that the Note and Trust Deed have been split. Plaintiff has provided no evidence to support this allegation. Therefore, this claim fails.

---

[19]*Id.* § 2605(i)(3).

[20]*Id.* § 2605(f)(1).

[21]*Id; see also Key v. Fifth Third Bank*, No. 2:06-CV-602 CW, 2009 WL 735048, *11 (D. Utah Mar. 18, 2009).

Exhibit 5
Page 6 of 8

C.    CHASE'S AUTHORITY TO FORECLOSE

Plaintiff also argues that Chase did not have the authority to foreclose the Trust Deed on

the Property.  As set forth above, the Deed of Trust states:

> Borrower understands and agrees that . . . MERS (as nominee for Lender and
> Lender's successors and assigns) has the right: to exercise any or all of [Lender's]
> interests, including, but not limited to, the right to foreclose and sell the Property;
> and to take any action required of Lender including, but not limited to, releasing
> and cancelling this Security Instrument.[22]

This Court, per Judge Kimball, interpreting an identical provision, has found that MERS

had the authority to initiate foreclosure proceedings, appoint a trustee, and to foreclose and sell

the property.[23]  Here, MERS assigned its beneficial interest under the Trust Deed to Chase, as

evidenced by an Assignment of Trust Deed.[24]  Thus, for the same reasons set out in *Burnett*,

Chase had the authority to foreclose the Deed of Trust.

## IV.  CONCLUSION

It is therefore

ORDERED that the Motion to Dismiss by Defendant Chase Home Finance (Docket No.

18) is GRANTED.  It is further

ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 21) is DENIED.

The Clerk of the Court is directed to close this case forthwith.

---

[22]Docket No. 19, Ex. B, at 3.

[23]*Burnett v. Mortgage Electronic Registration Systems, Inc.*, No. 1:09-CV-69 DAK, 2009
WL 3582294, *4 (D. Utah Oct. 27, 2009).

[24]Docket No. 19, Ex. C.

7

Exhibit 5
Page 7 of 8

DATED   August 16, 2010.

BY THE COURT:

TED STEWART
United States District Judge

8

Exhibit 5
Page 8 of 8

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## NORTHERN DIVISION

| | |
|---|---|
| JEFFERY RODEBACK, and KAP, LLC, as trustee,<br><br>        Plaintiff,<br><br>        v.<br><br>UTAH FINANCIAL, BAC HOME LOANS SERVICING, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, RECONTRUST, and FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>        Defendants. | **MEMORANDUM DECISION and ORDER**<br><br>Case No. 1:09-cv-00134-TC<br><br>Judge Tena Campbell |

Plaintiffs Jeffery Rodeback and KAP, LLC, claim that Defendants BAC Home Loans Servicing, LP (BAC), Mortgage Electronic Registration Systems, Inc. (MERS), Federal National Mortgage Association (FNMA), and ReconTrust have violated various provisions of federal and state law concerning the servicing and foreclosure of a mortgage. Defendants have moved to dismiss the complaint arguing that Plaintiffs have failed to state a claim. The court agrees with Defendants and GRANTS Defendants' motion.

**BACKGROUND**

Mr. Rodeback obtained a loan for $306,0000, which he secured with a trust deed on a piece of property. On May 5, 2009, after Mr. Rodeback failed to make payments on the loan, MERS initiated foreclosure proceedings under the trust deed. Mr. Rodeback transferred title to the property to KAP, LLC, on August 28, 2009, but he remained the borrower on the loan. On October 6, 2009, Mr. Rodeback sent several letters to BAC Home Loans, the company servicing his mortgage, including a letter with a number of requests for information about the servicing of

Exhibit 6

Page 1 of 7

his loan. He initiated this lawsuit on October 14, 2006, claiming that BAC did not respond to his request for information, that MERS did not have authority to foreclose, and that the note and the Trust Deed were split when the note changed ownership.

## ANALYSIS

When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the court must presume the truth of all well-pleaded facts in the complaint, but need not consider conclusory allegations. Tal v. Hogan, 453 F.3d 1244, 1252 (2006), cert. denied, 127 S. Ct. 1334 (2007); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). Conclusory allegations are allegations that "do not allege the factual basis" for the claim. Brown v. Zavaras, 63 F.3d 967, 972 (10th Cir. 1995). See also Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) ("conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based") (emphasis added). The court is not bound by a complaint's legal conclusions, deductions and opinions couched as facts. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). And although all reasonable inferences must be drawn in the non-moving party's favor, Tal, 453 F.3d at 1252, a complaint will only survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, quoted in Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). Stating a claim under Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555).

Qualified Written Request

2

Exhibit 6
Page 2 of 7

Plaintiffs first allege that BAC violated the Real Estate Settlement and Procedures Act

(RESPA), 12 U.S.C. § 2605(e), by failing to respond to a qualified written request (QWR).

Defendants contend that Plaintiffs did not submit a QWR, but if they did, that Defendants

responded to it as required by law.  Under § 2605(e)(1)(A), a QWR is a "written request from the

borrower (or an agent of the borrower) for information relating to the servicing of such loan . . .

."  A QWR must also

> Include[] a statement of the reasons for the belief of the borrower, to the extent
> applicable, that the account is in error or provides sufficient detail to the servicer
> regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B)(ii).  A QWR relates only to the "servicing" of the loan, which is

defined as requests relating to the "receiving any scheduled periodic payments from a borrower

pursuant to the terms of any loan . . . and making the payments of principal and interest and such

other payments with respect to the amounts received from the borrower as may be required

pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).  "That a QWR must address the

servicing of the loan, and not its validity, is borne out by the fact that § 2605(e) expressly

imposes a duty upon the loan servicer, and not the owner of the loan." Consumer Solutions Reo,

LLC v. Hillery, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009) (holding that a letter disputing the

validity of the loan rather than the servicing was not a QWR); see also MorEquity, Inc. v. Naeem,

118 F. Supp.2d 885, 900-01 (N.D. Ill. 2000) (holding that a letter alleging a forged deed and

irregularities in recording did not relate to the servicing of the loan).  If the lender fails to comply

with a QWR, the borrower is entitled to "any actual damages to the borrower as a result of the

failure; and . . . any additional damages, as the court may allow, in the case of a pattern or

practice of noncompliance with the requirements of this section, in an amount not to exceed

Exhibit 6
Page 3 of 7

$1,000." 28 U.S.C. § 2605(f)(1).

In this case, counsel for Mr. Rodeback sent a letter to BAC on October 6, 2009, that Mr.

Rodeback contends is a QWR.  This letter requested that BAC provide the following:

> 1. All application, disclosure and closing documents, including the promissory note.
> 2. History of the monthly principal, interest and escrow payments since inception. For each payment indicate the date received and the date posted.
> 3.  The amount, payment date, purpose, and recipient of all expenses charged or assessed to my mortgage account since inception (other than principal, interest, and escrow fees).  For each payment indicate the date received and the date posted.
> 4. The balance currently owing separately listing any unpaid principal, interest, and escrow charges.
> 5.  The amount, payment date, purpose, and recipient of all escrow account items, including, but not limited to taxes, water and sewer charges, and insurance premiums, charged and/or assessed to my mortgage account.
> 6.  The current balance in the escrow account.
> 7.  The current interest rate on my mortgage account.
> 8.  If you are not the current holder of the note, please provide the name, address, and other contact information of the holder, including a beneficiary statement and indicate your relationship to this entity.
> 9.  The date you started servicing the mortgage account, and if you acquired the servicing rights from another servicer, state the name of the prior servicer und the effective date of the transfer of servicing.

(Ex. C to Mot. Dismiss Am. Compl.)[1]  BAC responded to the portions of the letter that relate to

the servicing of the loan on January 14, 2010, more than sixty days after the request was made.

Defendants argue that even though their response was late, the QWR was not proper

under the statute because it did not identify any servicing error.  But the statute does not require

such an allegation.  Rather, it directs the borrower to provide either the reason the borrower

believes the account is in error or to provide enough information that the servicer can respond to

---

[1]Although Plaintiffs did not attach a copy of the letter to the Complaint, where a document is referred to in the complaint and is central to a claim, an indisputably authentic copy of the document may be considered in a motion to dismiss.  See GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).

Exhibit 6
Page 4 of 7

the QWR.  See 28 U.S.C. § 2605(e)(1)(B)(ii).

Defendants also argue that Plaintiffs do not have a claim because they did not allege

actual damages.  RESPA requires borrowers to show actual damages as a result of a failure to

comply with its provisions and allows the court to provide the borrower with additional damages

in the case of a pattern or practice of noncompliance.  28 U.S.C. § 2605(f)(1); see also Kee v.

Fifth Third Bank, No. 2:06-cv-00602, 2009 U.S. Dist. LEXIS 21502 at *32 (March 18, 2009);

Ricotta v. Ocwel Loan Serv., LLC, No. 06-cv-01502, 2008 U.S. Dist. LEXIS 13816 at *16-18

(February 22, 2008) (discussing RESPA's actual damages requirement).  In this case, Plaintiffs

have not alleged any actual damage resulting from the failure to respond or delay in responding

to the QWR.

Plaintiffs do not ask the court for any actual damages for the failure to respond to the

QWR, nor do they allege a pattern and practice of noncompliance.  Additionally, Plaintiffs filed

their lawsuit alleging failure to respond to their QWR only eight days after sending the request

letter, long before the statutory time for response from the loan servicer had run.  Instead of

asking for damages under RESPA, Plaintiffs ask the court to cancel the Trust Deed, end the

foreclosure proceeding, and declare that none of the Defendants have any interest in the property

at issue in the case.  Although Plaintiffs respond to the motion to dismiss by claiming that the

foreclosure action, notice of default, current lawsuit, and mental anguish are their actual

damages, these damages are not the result of Defendants' delay in responding to the QWR.

Rather, they flow from Defendants' actions occurring after Defendants' tardy response.

Split Note and Trust Deed

Plaintiffs argue that the Trust Deed securing the mortgage on the property is invalid

5

Exhibit 6
Page 5 of 7

because the underlying note was split from the Trust Deed when the note was assigned separately

from the Trust Deed.  As a result of this split, Plaintiffs also seek to extinguish the interest of

MERS, FNMA, or any other party claiming interest in the property pursuant to the note or trust

deed through a quiet title action.  Defendants argue that under Utah law, the note cannot be

assigned separately from the trust deed.  They point to the following statutory language: "The

transfer of any debt secured by a trust deed shall operate as a transfer of the security therefor."

Utah Code Ann. § 57-1-35.  In other words, each successor to the note receives the benefit of the

security.  Utah Code section 57-1-35 makes it impossible to split the note from the security

interest.  Therefore, the Trust Deed is valid even if the note changed ownership.

<u>MERS' Authority to Foreclose</u>

Plaintiffs contend that MERS does not have authority to foreclose the trust deed.

Defendants counter that the Trust Deed specifically authorizes MERS to foreclose. The trust

deed specifies that "MERS . . . has the right: to exercise any or all of [the interests granted by the

Borrower through the trust deed], including, but not limited to, the right to foreclose and sell the

Property; and to take any action required of the Lender, including, but not limited to, releasing

and canceling this Security Instrument." (Trust Deed 2-3 (attached as Ex.B to Mot. to Dismiss

Am. Compl.)) In <u>Burnett v. Mortgage Electronic Registration Systems, Inc.</u>, No. 1:09-cv-00069,

2009 U.S. Dist. LEXIS 100409 at *10-12 (October 27, 2009), the court interpreted an identical

provision in a trust deed to mean that MERS had authority under the trust seed to initiate

foreclosure proceedings, appoint a trustee, and to foreclose and sell the property.  Here, and for

the same reasons the court outlined in <u>Burnett</u>, MERS has the authority to foreclose on the Trust

Deed.

6

Exhibit 6
Page 6 of 7

For the above reasons the court GRANTS the motion to dismiss BAC, MERS, FNMA, and ReconTrust.

DATED this 13th day of July, 2010.

BY THE COURT:

*Tena Campbell*

_____

TENA CAMPBELL
Chief Judge

7

Exhibit 6
Page 7 of 7



**TERMS AND CONDITIONS**

1. MERS, which shall include MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc., and the Member shall abide by these Terms and Conditions, the Rules and Procedures (collectively, the "Governing Documents"), copies of which will be supplied upon request.   The Governing Documents shall be a part of the terms and conditions of every transaction that the Member may make or have with MERS or the MERS® System either directly or through a third party.  The Member shall be bound by any amendment to any of the Governing Documents.

2. The Member, at its own expense, shall promptly, or as soon as practicable, cause MERS to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan that the Member registers on the MERS® System.  MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time.  MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans.  MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties.  References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law.

3. MERS shall at all times comply with the instructions of the holder of mortgage loan promissory notes.  In the absence of contrary instructions from the note holder, MERS shall comply with instructions from the Servicer shown on the MERS® System in accordance with the Rules and Procedures of MERS.

4. No rights or obligations of the Member with respect to any data or information supplied to MERS by or on behalf of the Member shall be altered or affected in any manner by the provision of such data or information to MERS (except as otherwise specifically provided in these Terms and Conditions or the Rules of Membership).

5. If the Member uses MERS as Original Mortgagee (MOM) on the security instrument, the loan must be registered on the MERS® System within 10 days of the Note Date.

6. MERS and the Member agree that:  (i) the MERS® System is not a vehicle for creating or transferring beneficial interests in mortgage loans, (ii) transfers of servicing interests reflected on the MERS® System are subject to the consent of the beneficial owner of the mortgage loans, and (iii) membership in MERS or use of the MERS® System shall not modify or supersede any agreement between or among the Members having interests in mortgage loans registered on the MERS® System.

7. If the Member has a third-party register loans (the "Registrar") on the MERS® System on behalf of the Member, the Registrar shall not be deemed an agent of MERS.  The Registrar shall be solely an agent for the Member, and MERS is only giving consent to the Member to use a Registrar to enter information on the MERS® System on behalf of the Member.  The Member agrees that MERS is not liable to the Member for any errors and omissions, negligence, breach of confidentiality, breach of the Rules and Procedures, or willful misconduct of the Registrar, or any employee, director, officer, agent or affiliate of the Registrar in performing its services to the Member.

8. The Member shall promptly pay to MERS the compensation due it for transactions registered on the MERS® System and other services rendered to the Member based on the then current MERS fee schedules, which may change from time to time.  The Member shall promptly pay to MERS any interest and penalties on delinquent fee payments at the rate set by MERS from time to time.  MERS shall have the authority to impose reasonable penalties and fines on Members for breach of the Governing Documents, and the Member shall promptly pay such fines in accordance with the terms of their imposition.

9. MERS shall indemnify and hold harmless the Member, and any employee, director, officer, agent or affiliate of the Member  ("Member Party"), from and against any and all third-party claims, losses, penalties, fines, forfeitures, reasonable attorney fees and related costs, judgments, and any other costs, fees and expenses ("indemnified Payments") that the Member Party may sustain directly from the negligence, errors and omissions, breach of confidentiality, breach of the Terms and Conditions, breach of the Rules and Procedures, or willful misconduct of MERS, or any employee, director, officer, agent or affiliate of MERS ("MERS Indemnified Claim").  Notwithstanding the foregoing, MERS shall not be liable or responsible under the terms of this Paragraph for any losses or claims

Exhibit 7
Page 1 of 2

resulting from the actions or omissions of any person other than an employee, director, officer (who is also an employee of MERS), agent or affiliate of MERS.

The Member shall indemnify and hold harmless MERS, and any employee, director, officer, agent or affiliate of MERS ("MERS Party"), for any Indemnified Payments which do not result from a MERS Indemnified Claim and which such MERS Party incurs (i) from the negligence, errors and omissions, breach of confidentiality, breach of the Terms and Conditions, Rules and Procedures, or willful misconduct of a Member Party, (ii) with respect to a transaction on the MERS® System initiated by such Member, or (iii) as a result of compliance by MERS with instructions given by the Member, or its designee, as beneficial owner, servicer or secured party shown on the MERS® System ("Member Indemnified Claim").

MERS shall promptly notify the Member if a claim is made by a third party against either MERS or the Member with respect to any mortgage loan registered on the MERS® System in which the Member is shown on the MERS® System as beneficial owner, servicer or secured party in accordance with the Rules and Procedures. The Member shall promptly notify MERS if a claim is made against the Member that may be subject to the indemnification provisions of this Paragraph.

The obligations of MERS and the Member under this Paragraph shall survive the termination of the Member's use of the MERS® System.

10. MERS and the Member shall maintain appropriate insurance coverage that shall include an errors and omissions insurance policy and a fidelity bond. MERS shall not be required to maintain coverage for persons who may be appointed at the request of the Member as certifying officers of MERS. The Member's policies shall protect and insure MERS against losses in connection with the release or satisfaction of a mortgage loan without having obtained payment in full of the indebtedness secured thereby. Upon request, MERS or the Member shall cause to be delivered to the other a certified true copy of such errors and omissions insurance policy and fidelity bond.

In the event of any loss of principal or interest on a mortgage loan or any Indemnified Payments for which reimbursement is received from a fidelity bond or any errors and omissions insurance policy or other insurance policy, the proceeds from any such bond or insurance shall be held in trust for and be promptly paid to the Member who is shown as the servicer on the MERS® System on behalf of the beneficial owner unless otherwise requested by the beneficial owner.

11. Any notice or other communication which is required or permitted to be given or made to MERS pursuant to any provision of the Governing Documents shall be given or made in writing and shall be sent by nationally recognized overnight courier, or facsimile followed by delivery of the original via first class mail, addressed as follows: MERS, Corporate Secretary, 1818 Library Street, Suite 300, Reston, VA 20190.

12. These Terms and Conditions and all transactions effected by the Member with MERS shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia without regard to its choice of law provisions.

13. Neither the Member nor MERS shall institute a proceeding before any tribunal to resolve any controversy or claim arising out of or relating to these Terms and Conditions, Rules and Procedures, or the breach, termination or invalidity thereof (a "Dispute"), before such party has sought to resolve the Dispute through direct negotiation with the other party. If the Dispute is not resolved within thirty (30) days after a written demand for direct negotiation, the parties shall attempt to resolve the Dispute through mediation. If the parties do not promptly agree on a mediator, either party may request the then chief judge of the Circuit Court of Fairfax County, Virginia to appoint a mediator. All mediation proceedings hereunder shall be held in Washington, D.C. If the mediator is unable to facilitate a settlement of the Dispute within a reasonable period of time, as determined by the mediator, the mediator shall issue a written statement to the parties to that effect and the aggrieved party may then seek relief in accordance with the arbitration provisions of this Paragraph. The fees and expenses of the mediator shall be paid by the party initiating the Dispute.

In the event that the Member and MERS are not able to resolve a Dispute in accordance with the mediation provisions of this Paragraph, such Dispute shall be settled by binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof; provided, however, that the place of arbitration shall be Washington, DC, and fees and expenses for the arbitration proceedings shall be paid by the party initiating arbitration.

Exhibit 7
Page 2 of 2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 10, 2011, I caused to be served a copy of the foregoing DECLARATION OF PILAR C. FRENCH IN SUPPORT OF SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION TO DISMISS COMPLAINT on the following person(s) in the manner indicated below at the following address(es):

- JOHN O CAMPBELL   ocampbell@houser-law.com; chershey@houser-law.com

- JOHN M THOMAS    jthomas@rcolegal.com

- JAMES J. STOUT    jjstout1@aol.com

☑ by **CM/ECF**
☐ by **Electronic Mail**
☐ by **Facsimile Transmission**
☐ by **First Class Mail**
☐ by **Hand Delivery**
☐ by **Overnight Delivery**

/s/ Pilar C. French
Pilar C. French

PAGE 4 OF 4    DECLARATION OF PILAR C. FRENCH IN SUPPORT OF
SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION TO DISMISS
COMPLAINT

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

105727.1062/895120.1